Willie Thomas RUDOLPH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

March 14, 1977.

Rehearing Denied May 2, 1978.

Jack Emory Farley, Public Defender,
Timothy T. Riddell, Asst. Public Defender,
Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Chief Justice.

The appellant, Willie Thomas Rudolph, was tried by a jury and found guilty under all three counts of an indictment charging him with (1) trafficking in a Schedule I narcotic drug on August 4, 1976, (2) trafficking in a Schedule I narcotic drug on August 9, 1976, and (3) being a persistent felony offender by virtue of four previous felony convictions, three of which were for illegal possession of narcotics and the other for distributing heroin in violation of a federal statute. He appeals from a judgment sentencing him to 10 years in prison on Count 1, 10 years on Count 2, and 21 years on Count 3.

Though other arguments are presented, we shall confine this opinion to the points we consider needful of discussion.

■ By agreement of the parties the trial was not bifurcated as required by KRS 532.080(1). As an awkward result, two sets of instructions were given to the jury, one covering the principal offenses charged in Counts 1 and 2 and the other covering the persistent-offender status charged in Count 3 of the indictment.

The case is unusual in that quite apart from KRS 532.080, the persistent-offender statute, KRS 218A.990(1), under which the principal offenses were prosecuted, also prescribes an enhanced penalty for subsequent offenses, as follows:

"(1) Any person who knowingly and unlawfully traffics in or transfers a controlled substance classified in Schedules I or II which is a narcotic drug shall, for the first offense, be confined in the penitentiary for not less than 5 years nor more than 10 years or be fined not less than $5,000 nor more than $10,000, or both, and for each subsequent offense shall be confined in the penitentiary for not less than 10 years nor more than 20 years or be fined not less than $10,000 nor more than $20,000, or both."

Similarly, the ensuing subsections of KRS 218A.990 provide enhanced punishment for less serious drug offenses that are committed subsequent to a first conviction. One of these less serious offenses is that of unlawfully *possessing* (vis-a-vis *trafficking in*) a narcotic drug classified in Schedule I or II. As to it, KRS 218A.990(5) prescribes a penalty of one to five years in prison or a fine of $3,000 to $5,000, or both, for a first offense and five to 10 years in prison or a fine of $5,000 to $10,000, or both, for a subsequent offense.

The three previous drug-possession convictions of Rudolph were for violating KRS 218.020, a section of the Uniform Narcotic Drug Act which was repealed with the enactment of KRS Chapter 218A in 1972. KRS 218.020 prohibited the manufacture, possession or sale of any narcotic drug, but KRS 218.210, the penalty section, provided a lesser punishment for possession than for the other offenses, including manufacture or sale. The penalty for possession was two to 10 years in prison (and a fine) for a first offense and five to 20 years (and fine) for a subsequent offense, whereas the corresponding penalties for manufacture or sale were five to 10 years (and fine) for a first offense and 10 to 40 years (and fine) for a subsequent offense.

The point of all this is raised by Rudolph's contention that a prior conviction for possession cannot serve to enhance the punishment for a first conviction of trafficking, the two being different offenses. Except for one circumstance, admittedly puzzling, we might agree. That circumstance is subsection (6)(i) of KRS 218A.990, which says:

"(i) For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this act or under any statute of the United States or of any state relating to the substances classified as controlled substances."

For the sake of clarity, if this paragraph (i) of KRS 218A.990, subsection (6), was intended to apply to the entire statutory

section rather than to subsection (6) alone, it should have been made the subject of a separate subsection. As it happens, however, there it is, tucked away in an obscure cranny of subsection (6), which otherwise is devoted entirely to the treatment or punishment of persons found guilty of unlawfully possessing Schedule IV or V controlled substances or other controlled substances (Schedules I, II or III), excepting marijuana, that are not narcotic drugs.

Though it might be suspected that the word "section" (in the original Act, Acts of 1972, Ch. 226, § 31, it is capitalized) was intended to read "subsection," a perusal of KRS 218A.990 as a whole, in which the word "subsection" appears several times and is accurately used, suggests that this use of "section" (or "Section") was deliberate, and not an inadvertent aberration.

The way in which this apparent anomaly developed is revealed by the history of KRS Chapter 218A.990. The final draft of the Kentucky Penal Code included a chapter covering controlled substances offenses. See Kentucky Penal Code, Final Draft, November 1971, Chapter 29, "Controlled Substances Offenses." Prior to its submission to the General Assembly in the form of a bill, however, Chapter 29 was deleted in favor of a separate bill that was drafted and enacted independently of the Penal Code. This separate legislation was Chapter 226, Acts of 1972, now KRS Chapter 218A. In the drafting of this separate bill, which we shall refer to as KRS Chapter 218A, much of the language was lifted bodily from the defunct Chapter 29 of the Penal Code draft. What is now KRS 218A.990(6) was taken almost entirely from Sec. 2911 of the Penal Code draft, which provided for an offense called possession of controlled substances in the second degree. KRS 218A.990(6)(i) was Sec. 2911(11) of the Penal Code draft. In the Penal Code draft the term "subsequent offense" could not have included any offense but possession of controlled substances in the second degree, because Sec. 2911 was the only section of Chapter 29 that made any provision for or reference to a subsequent offense. See Sec. 2911(9) of the draft, the substance of which

was carried into KRS Chapter 218A as KRS 218A.990(6)(g).

If the story ended here, obviously we could say that KRS 218A.990(6)(i) applies only to the crime that is the subject of KRS 218A.990(6), because the "subsequent offense" mentioned in its source, Sec. 2911(11) of the Penal Code, applied only to the crime that was the subject of Penal Code Sec. 2911. But there is more.

As KRS Chapter 218A was originally introduced, the only provision made in the entire chapter with respect to a "subsequent offense" was contained in KRS 218A.990(6), the subsection discussed in the preceding paragraph of this opinion. Subsections (1), (2), (3), (4) and (5) of KRS 218A.990 as first introduced made no mention of subsequent offenses, but were later amended to provide for them, as they now do. When these amendments were offered, considered and adopted, what is now paragraph (i) of KRS 218A.990(6) was in the bill. It said that for purposes of the "section" an offense would be considered a subsequent offense if it was preceded by a conviction for *any* drug-related offense. We cannot assume that in voting on the amendments the members of the legislative body understood the word "section" to mean "subsection." It seems more reasonable to assume that if they had, they would have included with the amendments some similar definition of what was meant by the words "subsequent offense" in subsections (1), (2), (3), (4) and (5) as well.

We have no alternative here but to say that the word "section" as used in KRS 218A.990(6)(i) means what it says, which in turn means that each and all of Rudolph's prior convictions of drug-related crimes exposed him to conviction of a higher offense under KRS 218A.990(1) than the one specified for a first offender.

■ The principal crimes of which Rudolph was convicted in this case, having been committed in August of 1976, occurred during the time KRS 532.080(3) was in the anomalous state described in *Newton v. Commonwealth,* Ky., 558 S.W.2d 167 (1977);

that is, in order to support a conviction under that statute it was necessary for the Commonwealth to prove that the defendant had been discharged from probation or parole within five years after commission of the felony for which he was last convicted. There was a failure of proof in this respect, but also a failure by Rudolph to test its sufficiency by objection to the instructions authorizing the jury to find him guilty of being a persistent felony offender. We have held consistently that insufficiency of the evidence to support a verdict must be timely raised in the trial court—ordinarily by a motion for a directed verdict or, as would have been appropriate ·in this instance, an objection to the instruction or instructions that are not sufficiently supported by the evidence—in order for the question to be reviewable on appeal. *Vachon v. New Hampshire,* 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974), cited by Rudolph for the proposition that a conviction without any relevant evidence on a crucial element of the offense charged is a violation of due process, does not fit this case, because, among other differences, in that proceeding the defendant had challenged the sufficiency of the evidence in the trial court. It is settled that except in the most flagrant of circumstances even constitutional rights may be waived by nonassertion. Cf. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Futrell v. Commonwealth,* Ky., 437 S.W.2d 487, 488 (1969); *Newell v. Commonwealth,* Ky., 549 S.W.2d 89, 91 (1977).

Before leaving the persistent-offender aspect of the case we are moved to point out the potential for abuse that inheres in the use of KRS 532.080, the persistent-offender statute, on top of the subsequent-offender enhancement provisions of KRS 218A.990. It is doubtful that this was ever intended, yet literally KRS 532.080 suggests no impediment. A first violation of KRS 218A.990(1) carries a penalty of five to 10 years' imprisonment and thus is defined by KRS 532.020(1)(b) as a Class C felony. A subsequent violation of the same statutory subsection calls for a penalty of 10 to 20 years' imprisonment and thus becomes a Class B felony. KRS 532.020(1)(c). For a first-degree (third felony) persistent offender, if his last offense is a Class C felony the maximum penalty is between 10 and 20 years' imprisonment, but if his last offense is a Class B felony the maximum penalty is between 20 years and life imprisonment. KRS 532.080(6). Thus if the third felony happens to be a "subsequent offense" under KRS 218A.990(1), the punishment is doubly enhanced, once through elevation from a Class C to a Class B felony by virtue of KRS 218A.990(1) itself and then through the greater penalty invoked by KRS 532.-080(6) for a Class B felony.

For one who has proved himself to be an inveterate dopehandler, as in this particular instance, it is doubtful that any amount of enhancement in punishment would result in an injustice. Certainly, however, the relationship between the various subsections of KRS 218A.990 and KRS 532.080, the persistent-offender statute, appears to be an appropriate subject of legislative review.

■ Our conclusion that each of Rudolph's previous drug-related convictions serves as a proper basis for finding him guilty of an aggravated offense under KRS 218A.990(1) reduces the significance of the way in which the proof of his federal heroin conviction was handled. We see no real prejudice in that respect. We are of the opinion also that the prosecutor's comments characterizing Rudolph as a professional trafficker in drugs were not unreasonable. The jury could hardly have been so naive as not to realize it anyway.

The actions of the trial judge in handling the voir dire were not an abuse of his discretion.

■ Rudolph's contention that his sentence should be modified to impose only one punishment, which is 21 years in prison under the persistent-offender statute, is correct, as the Commonwealth concedes. Cf. *Newcomb v. Commonwealth,* Ky., 531 S.W.2d 489 (1975).

The trial court is directed to modify the judgment by deleting the 10-year sentences imposed under Counts 1 and 2 of the indict-

ment. As so modified, the judgment is affirmed.

All concur.