Shelia WILSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

May 13, 1980.

Jack E. Farley, Public Advocate, Kevin Michael McNally, M. Gail Robinson, Asst. Public Advocates, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Appellant Shelia Wilson, 26 years of age, and a male friend, Robert Wayne Goff (Sandy), were jointly indicted by the Christian County Grand Jury for the offense of murder (KRS 507.020(1)(a)). The victim was Michael Lewis Wilson (Mike), husband of appellant and father of their two children. The offense was alleged to have been committed on February 3, 1978, in Christian County, Kentucky. The trial court granted a severance. A two-day trial, which commenced on March 12, 1979, resulted in the appellant's being found guilty and sentenced to 20 years' imprisonment. On March 30, 1979, an order was entered by the trial judge denying probation or conditional discharge. However, the court did enter an order permitting the appellant to appeal in forma pauperis, and the court designated the Office of Public Defender as counsel on this appeal.

On this appeal we are faced with ten alleged errors. Counsel for appellant commences his brief with the suggestion that there is no doubt but that appellant may be guilty of:

1. KRS 520.120, KRS 520.130—hindering prosecution or apprehension in the first or second degree, Class D felony and Class A misdemeanor, respectively, or

2. KRS 523.100(1)(a)—falsification to authorities, Class B misdemeanor, or

3. KRS 523.020, KRS 523.030, KRS 523.-040—filing missing person's reports, Class D felony, Class A misdemeanor, Class B misdemeanor, respectively,

but that she is not guilty of murder. He tabulates the punishment for these offenses at up to five years' imprisonment. Although the appellant was charged with murder, the trial court instructed the jury pursuant to "liability for conduct of another." KRS 502.020 (complicity).

I

"Appellant has been denied due process of law by her conviction of complicity to murder because the record is devoid of evidence of guilt of that offense."

Since this challenge is made at the sufficiency of the evidence, we need to carefully consider its quality.

The appellant, Sandy and Mike had been friends for about five years while living in Gastonia, North Carolina. Mike and the appellant lived in constant marital turmoil. Sandy was more aggressive. He had murdered his wife and, during the period of time mentioned herein, was a fugitive from justice. The appellant, although being pregnant, and her children left Mike and came to Hopkinsville, Kentucky. She and

the children lived in Sandy's apartment; however, the appellant was soon followed to Kentucky by her husband Mike (November 1977). The living arrangements then changed. Mike, appellant and their children lived in Sandy's apartment, and Sandy moved in with Sue Duprel and her children in Sue's trailer home. Mike's sojourn was short lived. He and Sandy fought physically as well as verbally, as did Mike and the appellant. On the fateful night the appellant, Mike and Sandy left from Sue's trailer in Sandy's pickup truck, with Shelia doing the driving and Sandy directing the route to be taken. Sandy and Mike had been engaged in their usual quarreling. After driving a short distance appellant stopped the truck. Mike and Sandy got out, but she stayed in the truck. The argument between Mike and Sandy continued. Although friends, Sandy constantly expressed fear that Mike would turn him in to the North Carolina authorities. Eventually Sandy was arrested in California on the fugitive warrant, but not until Mike was long gone. A short while after stopping the truck and Mike and Sandy getting out, Shelia heard a shot; however, when she got out of the truck to investigate, she was directed by Sandy to get back in the truck. One or two more shots were soon fired. Sandy got back in the truck and the appellant drove away, leaving Mike fatally wounded. Upon returning to Sue's trailer home, Sue, Sandy and appellant were seated at the kitchen table talking about what had happened. Sandy said that he had shot Mike three times. Shelia had Mike's wallet and identification cards, which she destroyed.

A chronological outline of the conduct of the parties clarifies the sufficiency of the evidence to withstand the attack:

1978

Feb. 3    Appellant, Sandy and Mike, with appellant driving Sandy's pickup truck and Sandy directing the route, in the late hours of the night left Sue's trailer home. After a short drive, the appellant stopped the truck and Mike and Sandy got out. Sandy shot and killed Mike. Appellant and Sandy returned to Sue's trailer home.

Feb. 4    Appellant, Sandy and Jane Heilman discussed Sandy's escape.

Feb. 6    Sandy left Hopkinsville under the pretense of going to Canada.

Feb. 13    Appellant made a telephone call to the missing persons section of the Hopkinsville Police Department, notifying it of Mike's disappearance.

Feb. 17    Sandy returned to Hopkinsville.

Feb. 18    Appellant went with Jane Heilman to purchase a pistol for Sandy. The purchase was made in the name of Jane Heilman, but the pistol was given to Sandy. Jane also gave Sandy $1,000 with which to make his escape.

Feb. 19    Sandy again left town and went to California.

Mar. 16    Appellant made a missing persons report to the Kentucky State Police, notifying them of Mike's disappearance.

End of March    Appellant received $300 from Sandy for Jane's plane fare to California.

Apr. 1    Mike's partially decomposed body was discovered.

May 5    Appellant made two written confessions containing contradictory statements.

Counsel for appellant argues that the evidence was wholly insufficient to justify submitting the case to the jury and of supporting the verdict of the jury. The standard by which we are guided is stated in *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977), as follows: "If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." The appellant predicates her argument on the contention that there was no intent to kill shown on behalf of the appellant. Intent is, of course, a necessary element of this offense. However, intent may be shown in many ways. The conduct of the accused both prior to and subsequent to the actual killing is admissible as evidence tending to show facts from which intent can and should be inferred. *Kearns v. Commonwealth*, 243 Ky. 745, 49 S.W.2d 1009 (1932). The trial judge did not err in refusing to direct a verdict of acquittal.

## II

"Appellant was denied her right to a fair and impartial jury and due process by the trial judge's severe restriction of voir dire."

■ The answer to appellant's second issue is found in RCr 9.38, which provides as follows:

"Examination of Jurors—The court may permit the attorney for the commonwealth and the defendant or his attorney to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the attorney for the commonwealth and the defendant or his attorney to supplement the examination by such further inquiry as it deems proper. The court may itself submit to the prospective jurors such additional question submitted by the parties or their attorneys as it deems proper."

Appellant is chagrined in that her counsel was not permitted to actively participate in the voir dire interrogation of the members of the jury panel. We have held that the manner of conducting the voir dire is left to the trial judge and his actions will not be disturbed by this court unless he abuses his discretion in the manner in which the jury was voir dired. *Woodford v. Commonwealth*, Ky., 376 S.W.2d 526 (1964). The purpose of the voir dire interrogation has been expressed in many ways. However, the prime objective of the voir dire is to finally select jurors who will render a fair and impartial verdict.

On January 31, 1979, counsel for appellant filed with the trial court a list of 38 questions which he sought to have included in the voir dire examination. A week or so before the case came on for trial, the trial court denied appellant's motion and on the trial individually conducted the voir dire examination. It was a lengthy and thorough voir dire interrogation. It consisted of 44 typewritten pages of 25 members of the panel before a jury was chosen which was acceptable to all counsel. The Commonwealth used four of its preemptory challenges, and appellant's counsel used

five. We do not make mention of the fact that neither of the parties used all of his preemptory challenges to justify the selection of the trial jury but to demonstrate that the trial judge extensively queried the prospective jurors in an effort to secure a panel of jurors that would consider fairly and impartially the evidence so as to provide for an impartial trial. The trial judge, with the assistance of questions submitted by counsel, conducted an intelligent and thorough voir dire examination. In *Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974), we wrote:

"It is our opinion that separate examination of jurors or prospective jurors in circumstances of potential prejudice is a matter of procedural policy and is not a requirement of due process. We hold that the granting or denial of the motion for separate examination in the instant case was within the discretion of the trial court, and we find no abuse of that discretion."

Counsel for appellant did not make manifest any extraordinary or unusual cause that would require the trial judge to turn the voir dire examination over to counsel. From a review of the record it appears that the trial judge did not abuse his discretion in himself conducting the voir dire examination.

## III

"The repeated introduction of hearsay testimony severely prejudiced appellant and denied her right to confront the witnesses against her in violation of the 6th and 14th amendments to the United States Constitution and Section 11 of the Kentucky Constitution."

■ A review of the transcript of testimony does reveal that from time to time hearsay testimony was permitted to be introduced; however, we fail to find where any objection was made. We have consistently held that for an issue to be considered on appeal, it must have been raised at the trial level so that the trial judge can have an opportunity to pass on the issue. No

objection having been made to the testimony now being complained of, we deem the issue as having been waived. *Wilhite v. Commonwealth*, Ky., 574 S.W.2d 304 (1978).

### IV

"Appellant was denied a fair trial and due process of law by the misconduct of the Commonwealth at trial."

■ Appellant complains of the alleged misconduct of the Commonwealth in ten instances during the course of the trial. Although complaint is made óf ten alleged errors, only two are preserved for appellate review.

One of the alleged errors properly preserved has to do with a statement charged to the Commonwealth's Attorney in his closing argument, that after Mike's body had been found the appellant disposed of his combat boots. The transcript of testimony is not clear whether the boots were disposed of prior to or subsequent to the discovery of Mike's body. This comment on behalf of the Commonwealth's Attorney, presumably, was his understanding of the testimony relative to the boots. In any event, we do not consider the statement to be prejudicial.

The other issue properly preserved has to do with appellant's alleged threat to kill her husband. The transcript of testimony is not clear as to whether the appellant herself made the threat or whether she had requested that the killing be done by someone else. As in the former preserved alleged error, we find that even though the Commonwealth's Attorney may have been mistaken as to the source of the threat, it was not prejudicial to appellant.

### V

"Appellant was denied the effective assistance of counsel as guaranteed by the 6th and 14th amendments to the United States Constitution and Section 11 of the Kentucky Constitution."

■ This court has consistently held that the issue of ineffective assistance of counsel must be raised at the trial level by means of a post-trial motion for it to be considered on appeal. *Caslin v. Commonwealth*, Ky., 491 S.W.2d 832 (1973). In *Hennemeyer v. Commonwealth*, Ky., 580 S.W.2d 211 (1979), this court said:

"We are confronted with the admitted fact that movant's charge of ineffective assistance of counsel was not presented to the trial court for consideration. Until it was so presented and denied, there was no error for appellate review."

In the subject action this issue was not presented to the lower court; consequently, it has not been preserved for appellate review.

### VI

"The trial court denied appellant due process of law by refusing to grant a continuance and by refusing to strike the FBI agent's and Heilman's testimony."

On March 9, 1979, three days prior to trial, counsel for appellant filed a motion for a continuance, which was denied. In support of this motion, appellant alleges that:

(1) The Commonwealth's Attorney failed to inform her of any agreement with witnesses for immunity or leniency;

(2) The continuance should have been granted to provide more time for appellant to obtain voluntary exculpatory testimony from Sandy;

(3) The Commonwealth's Attorney failed to provide appellant with the criminal records, if any, of the Commonwealth's witnesses;

(4) Appellant sought but was denied the privilege to "go on record" that the Commonwealth refused and failed to provide the requested information on immunity.

■ At the commencement of the trial, counsel and the trial judge retired to the judge's chambers to consider pending motions. It was established that only one witness, Jane Heilman, had been dealt with in that manner, even though the Commonwealth denied such an agreement. The

Commonwealth's Attorney's response to the motion for a continuance was an open file policy. In other words, the full and complete file in the office of the Commonwealth's Attorney was open to counsel for appellant. The court adjudged the answer sufficient. It is noted that in addition the Commonwealth's Attorney, at a pretrial conference, advised that Sandy had a prior criminal record. This however, was already known to counsel for appellant and no further enlightenment was necessary.

■ The granting or failing to grant a continuance is in the discretion of the trial judge, and we will not disturb his action in the absence of a showing of substantial prejudice. *Howard v. Commonwealth*, Ky., 554 S.W.2d 375 (1977); *Nickell v. Commonwealth*, Ky., 565 S.W.2d 145 (1978); *Poteet v. Commonwealth*, Ky., 556 S.W.2d 893 (1977); and *Sweatt v. Commonwealth*, Ky., 550 S.W.2d 520 (1977). There is no showing that appellant was prejudiced by the court's action in denying the motion for a continuance.

■ The appellant further contends that the testimony of the FBI agent should have been stricken because it was not furnished in accordance with the court's pretrial order. The evidence of the FBI agent identified the corpse and the appellant was cognizant of this identification from the first part of April 1978. Appellant's chagrin in this respect is not well taken.

■ During the course of the trial Jane Heilman was called as a witness for the Commonwealth. She had made a statement, a copy of which had not been furnished to counsel for appellant, nor had he been afforded an opportunity to read the statement until after the witness had testified. RCr 7.24(2) excludes such statements from discovery. However, in the subject action, the Commonwealth's Attorney had announced and made his records open to the appellant's counsel at all times. We do not find that the court abused its discretion in permitting Jane Heilman to testify.

## VII

"The inadequate instructions violated appellant's 14th amendment right to present her defense and to due process of law."

Counsel for appellant argues that the complicity/murder instruction given by the court was erroneous. The issue was not raised in the lower court; consequently, it has not been preserved for review by this court. *Rudolph v. Commonwealth*, Ky., 564 S.W.2d 1 (1978).

Appellant's counsel further argues that a complicity/manslaughter instruction should have been given. However, no request was made for such instruction. This issue has been waived.

■ Appellant argues that the court should have given an instruction on hindering apprehension. Hindering apprehension is not a lesser included offense of murder, and in the absence of some unusual circumstance an instruction would not be given on this charge. Appellant's effort to convince this court of her right to receive an instruction on hindering apprehension is predicated on her claim that this offense is all that she was guilty of. Since appellant was not charged with hindering apprehension and it not being a lesser included offense to the offense of murder with which the appellant was charged, there was no error in the trial court's refusal to grant such an instruction. *Luttrell v. Commonwealth*, 250 Ky. 334, 63 S.W.2d 292 (1933); *Carsons v. Commonwealth*, 243 Ky. 1, 47 S.W.2d 997 (1932).

The court instructed the jury as follows:

"The jury will find the defendant, Shelia Wilson guilty if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

\* \* \* \* \* \*

(c) That the defendant, Shelia Wilson, aided and assisted said Goff or 'Radford' by transporting him to and from the scene of said shooting;

and

(d) That in so aiding and assisting Goff or 'Radford' it was Shelia Wilson's intention to cause the death of Michael Lewis Wilson."

■ Counsel for appellant requested that a more thorough instruction than that which was given by the court should have been give regarding appellant's mental state, and appellant sought an instruction on foreknowledge of the intended crime with sufficient elasticity so that there would be "room for the jury to read between the lines." The instructions given by the trial judge were sufficient and no further "reading between the lines" instruction was necessary. Palmore's Kentucky Instructions to Juries, Vol. 1, Sec. 9.13.

■ Appellant's counsel sought an accomplice instruction as to the witnesses Jane Heilman and Sue Duprel. The transcript of testimony does not reveal any relationship between these parties that would justify such an instruction, and the court was correct in not giving such an instruction.

### VIII

"Appellant has been denied due process of law and her right to present a defense by the trial court's refusal to permit testimony regarding appellant's good reputation for truthfulness and veracity."

■ The appellant called several character witnesses to testify in her behalf. The first witness to be called for appellant was asked as to her "reputation as to truthfulness and veracity." The court inquired as to whether appellant intended to testify. Not being assured that she would, the court sustained an objection to the question in the form in which it was posed. The court did, however, permit inquiry to be made as follows: "Do you have any opinion as to Shelia Wilson's reputation for peacefulness and quietude?" At no place in the record was an avowal made as to what answer would be given to the question concerning Shelia's reputation for truthfulness and veracity. The appellant's reputation for truthfulness and veracity was not an issue, and until it was placed in issue evidence relating thereto was not admissible. In Kentucky the rule seems to be well settled that evidence relating to reputation for truthfulness cannot be introduced until that issue is raised.

*Frith v. Commonwealth*, 288 Ky. 188, 155 S.W.2d 851 (1941). The court did not err in refusing to permit the question to be answered.

### IX

"The trial court abused its discretion and deprived appellant of due process by denying her probation or conditional discharge."

■ Appellant requested the court for probation or for a conditional discharge. Impressive supporting documents were filed with her request. The court's order of March 30, 1979, contained findings of fact and conclusions of law, from which the court concluded that appellant's request for probation or conditional discharge should be denied. This state has a well settled rule that unless there exists some constitutional or statutory limitation, the sentencing power of a trial court is discretionary. *Tarrance v. Commonwealth*, Ky.App., 548 S.W.2d 147 (1977); *Bartrug v. Commonwealth*, Ky.App., 582 S.W.2d 61 (1979). We do not find the court abused its discretion.

### X

"Appellant's sentence must be vacated because she was sentenced for a crime for which she was not convicted."

■ In Kentucky one who is found guilty of complicity to a crime occupies the same status as one being guilty of the principal offense. Therefore, there is no error when appellant was sentenced under the principal offense as she was actually tried and found guilty of the principal offense.

The judgment is affirmed.

All concur, except STEPHENS, J., who did not sit.