**K.R. (a/k/a J.W.), a Child, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000076–DG.

Supreme Court of Kentucky.

Feb. 23, 2012.

Bruce P. Hackett, Chief Appellate Defender, Elizabeth B. McMahon, Assistant Public Defender, Emily Nicole Farrar–Crockett, Office of the Louisville Metro Public Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General, Samuel Joseph Floyd, Jr., Dorislee J. Gilbert, Office of the Commonwealth's Attorney, Special Assistant Attorney General, Louisville, KY, for appellee.

Opinion of the Court by Justice NOBLE.

This case comes before the Court on review of the Court of Appeals' affirmance of entry of a writ of mandamus by the

Jefferson Circuit Court requiring the Jefferson District Court to transfer Appellant, K.R., a/k/a J.W., to circuit court as a youthful offender pursuant to the mandatory transfer language in KRS 635.020(4) when a firearm is used in commission of a felony offense. For the reasons set forth herein, this Court affirms.

## I. BACKGROUND

Appellant was charged with first-degree assault, first-degree burglary, and tampering with physical evidence in a juvenile proceeding in Jefferson District Court on June 19, 2008. At that time, she was sixteen years old. At a subsequent probable cause and transfer hearing under KRS 635.020(4), the Commonwealth amended the assault charge to complicity to commit assault in the first degree and the burglary charge to attempted burglary in the first degree.

At the hearing, the Commonwealth's sole witness was a police officer who had investigated the case. The officer stated that Appellant had only lived in Louisville for a few months, engaging in prostitution. The adult male victim, Juan Velasquez, had acknowledged that he engaged in prostitution with her. At that time, he and Appellant got into a dispute over the nature of the sex act to be performed after he had already paid her. When she attempted to leave, he and some of his roommates grabbed her and pulled a bracelet off her arm.

Appellant reported the theft of her bracelet to a male friend, Javier Gutierrez, and another juvenile acquaintance, J.L., who had a gun. The three then drove by Velasquez's apartment complex, and one of the men shot into an apartment. However, this was the wrong apartment, but

Appellant did finally direct them to the correct one. Appellant knocked on the door and climbed up on the window, attempting to gain entry. When that failed, she and the two males started around to the back of the apartments, but one of the males saw Velasquez at a window and shot him in the face. Velasquez had to have surgery to remove a bullet from his jaw.

Appellant later took the gun from J.L. and gave it to another man, allegedly in exchange for drugs, and J.L. then beat her. This incident led to the police learning of the assault against Velasquez and charging Appellant.

The Commonwealth moved the district court to order transfer to the circuit court under KRS 635.020(4), which mandates transfer if the district court finds, among other things, that there was probable cause to believe that a firearm was used in the commission of a felony.[1] After hearing the officer's testimony at the transfer hearing, the district court found that there was probable cause for the charges—including complicity to assault—for purposes of detention. The court, however, found that there was no probable cause to believe that Appellant had used a firearm in the commission of the offenses. Specifically, the court found that there was no testimony that Appellant had wielded the gun, provided the gun, asked that the victim be shot, or knew in advance that someone would be assaulted. The court thus found that there was insufficient evidence to demonstrate Appellant's "use" of the firearm under KRS 635.020(4). As a result, the district court declined to order transfer of the Appellant to circuit court as a youthful offender.

---

1. The Commonwealth did not seek to transfer the Appellant under any other provision of KRS 635.020.

The Commonwealth then filed a petition for a writ of mandamus with the Jefferson Circuit Court, asking that the court order the district court to transfer Appellant as a youthful offender. On October 9, 2008, the circuit court granted the writ of mandamus. Appellant filed a timely appeal at the Court of Appeals, which affirmed entry of the writ by the Jefferson Circuit Court. This Court granted discretionary review to clarify the effect of being charged with complicity when a firearm was used in commission of the offense under the firearm provision of KRS 635.020(4), and whether a writ is appropriate under circumstances such as those in this case.

## II. ANALYSIS

■ Petitions for extraordinary writs are decided by a two-step analysis. First, a court must determine whether such an extraordinary remedy is even available before looking at the merits of a petitioner's claim. *See Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961). If the remedy is not available, "the petition should be dismissed forthwith." *Id.* Second, if the remedy is available, the court looks to the merits of the petitioner's claim and decides whether the lower court is proceeding erroneously. *Hoskins v. Maricle*, 150 S.W.3d 1, 18 (Ky. 2004) ("[O]nly after determining that the prerequisites exist will the court decide whether an error occurred for which a writ should issue."). Even then, whether to issue the writ lies within the discretion of the higher court. *Id.* at 5 ("[W]hether to grant or deny a petition for a writ is not a question of jurisdiction, but of discretion."); *Bender*, 343 S.W.2d at 800 ("The exercise of this authority has no limits except our judicial discretion.").

**A. The Writ of Mandamus Is an Available Remedy.**

■ The extraordinary writs are available in two classes of cases. The first, which is not at issue here, requires, a showing that the lower court is acting without jurisdiction and there is no remedy available from an intermediate court. *Hoskins*, 150 S.W.3d at 10. The second class usually requires a showing of no adequate remedy by appeal and great and irreparable injury. *Id.* Of these two requirements, the first is mandatory; the second is not. *Bender*, 343 S.W.2d at 801. While it is true that writs are extraordinary remedies usually disfavored by the courts, there are "special cases" that merit entry of a writ when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is in "the interest of orderly judicial administration." *Id.* A finding of "great injustice and irreparable harm" is not necessary in this type of writ. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky.2004). However, if there is an adequate remedy by appeal, this type of writ is not available. *Id.*

The Court of Appeals affirmed the writ on the grounds that the Commonwealth had no adequate remedy by appeal and that this was one of the "certain special cases" discussed in *Bender*. Appellant argues that a writ of mandamus is not appropriate in this case because the Commonwealth did not establish the elements necessary under the "special cases" category.

■ The Court of Appeals correctly found that the Commonwealth did not have an adequate remedy by appeal in this case. The district court's denial of the motion to transfer Appellant to circuit court was an interlocutory order because further proceedings were necessary in district court to dispose of all the issues in the case. A district court's interlocutory orders cannot be immediately appealed to the circuit court; instead, only final actions of the district court may be appealed. *See*

KRS 23A.080(1); *Tipton v. Commonwealth*, 770 S.W.2d 239 (Ky.App.1989). And once a juvenile case has reached final adjudication, the double jeopardy clause of the Fifth Amendment would bar the Commonwealth from appealing the district court's decision not to transfer the case, because the juvenile could not be retried in circuit court once his or her case had been adjudicated in district court. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The jeopardy before the circuit court would amount to a second, and therefore impermissible, jeopardy.[2] For these reasons, the Court of Appeals was correct in finding that the Commonwealth did not have a remedy by appeal.[3]

■ The next question under the "special cases" category is whether "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801. In such a case, "the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury." *Id.*

If this were a case about *discretionary* transfer under one of the categories listed in KRS 635.020, a writ would most likely be unavailable. Under those provisions, the General Assembly has specifically granted the district court great leeway to consider various factors in deciding whether transfer would be appropriate. Even if such a decision is erroneous, it does not undermine the law and is unlikely to result in a substantial miscarriage of justice.

KRS 635.020(4), on the other hand, provides that transfer is *mandatory* when a firearm is used in commission of the underlying offense. By treating offenses in which a firearm is used differently, the General Assembly has declared a different public policy, one of essentially no tolerance of gun-related crimes by juveniles. In light of that policy, it would be unjust to allow a juvenile who has used a firearm to avoid prosecution as a youthful offender. If the district court erred in finding that the gun was not used by the Appellant, then it failed to comply with the mandate of KRS 635.020(4), which creates a risk that the administration of justice will suffer. In such a case, a writ of mandamus would be appropriate.

The Commonwealth thus satisfies the requirements of the second class of extraordinary writs. It has no adequate remedy by appeal or otherwise, and the district court's decision, if erroneous, threatens the sound administration of justice, placing this case within the "certain special cases" exception. Thus, remedy by writ is available to the Commonwealth.

## B. The Merits of the Commonwealth's Claim.

Having concluded that the writ is available, this Court must turn to the merits of the Commonwealth's claim. This involves two different questions. First, as a matter of law, can a juvenile who is charged as

---

**2.** This is because the jeopardy that attaches at the district court at the start of the adjudication hearing terminates upon transfer and does not continue at a second level of court. *Cf. Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 309, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (upholding two-tiered bench-then-jury-trial system before same court under "continuing jeopardy theory").

**3.** The Appellant argues briefly that the Commonwealth had an adequate remedy "otherwise" because it could have sought transfer under one of the discretionary categories listed in KRS 635.020. The possibility of a discretionary transfer, however, is not equivalent to a mandatory transfer. Thus, this alternative remedy is inadequate, since there is no guarantee it can vindicate the interests advanced by the Commonwealth.

being complicit to a crime in which a firearm is used be transferred to circuit court as a youthful offender under the mandatory transfer provision of KRS 635.020(4)? Second, assuming the first question is answered affirmatively, did the district court err in this case in finding that the firearm was not used in the offense with which Appellant was charged?

### 1. A Crime Committed by Complicity Can Fall Under the Mandatory Transfer Provision.

The application of KRS 635.020(4) to a juvenile charged with complicity to a felony must first focus on the strong language of this section, which states: "Any other provision of KRS Chapters 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a firearm, whether functional or not, was used in the commission of the offense, ... he *shall be* transferred to the circuit court for trial as an adult...." (Emphasis added.) While the statute includes some other qualifiers that are important, this language sets forth the legislative intent to place juveniles who are involved in gun crimes in a different position than other public offenders. This is sometimes referred to as an "automatic transfer" rule, but that is only true if all the statutory elements are met: there must be probable cause to believe that the juvenile committed a felony, that a firearm was used in commission of that felony, and that the juvenile was 14 years of age or older at the time of the commission of the alleged felony. KRS 635.020(4). Yet the seriousness with which the legislature regards the use of guns by juveniles is clearly presented.

When a gun is used in the commission of a felony, the district court's first inquiry must be whether that use was by the juvenile directly or whether the use can be attributed to the juvenile.

When the juvenile is charged as a principal, that is, having directly committed the charged offense and used a gun in the process, this inquiry is relatively simple. For example, first-degree assault is the criminal offense in this case involving a firearm. The first-degree assault statute, KRS 508.010, requires that a defendant must intentionally cause serious physical injury by means of a deadly weapon or a dangerous instrument. The shooter in this case, possibly the juvenile J.L., clearly committed first-degree assault, according to the testimony presented at the hearing, because he intentionally shot at the victim with a firearm, a deadly weapon, and caused serious physical injury. KRS 508.010. Had this case involved the question of the shooter's transfer, whether to do so would have been obvious.

But the Appellant in this case was not the shooter. Instead, she was charged as an accomplice rather than as a principal, because the testimony was that one of the males she had asked to help her retrieve her property or to punish the victim was the actual shooter. This Court has previously stated in dicta that to be transferred under KRS 635.020(4), "the child must ... at least be complicit in another person's use of a firearm." *Chipman v. Commonwealth*, 313 S.W.3d 95, 99 (Ky.2010). With the opportunity to address this issue being directly before us, we agree that a juvenile charged as an accomplice to an offense in which a firearm is used falls under the mandatory transfer provision of KRS 635.020(4).

The Appellant argues that such a reading ignores the language of the statutes because it allows her to be transferred when she did not *use* the gun as required by KRS 635.020(4). To understand how the transfer provisions can apply to complicity to first-degree assault with a deadly weapon, the Court must first look to the

complicity statute, KRS 502.020. The complicity statute makes a defendant guilty of an offense committed by another person. The statute states quite plainly that under certain circumstances, "[a] person is guilty of an offense committed by another person." KRS 502.020(2). And when the crime requires causing a particular result, as is the case with first-degree assault, the charged accomplice "is guilty of that offense." KRS 502.020(2).

■ Given the overall rehabilitative purposes of the Juvenile Code, Appellant has argued that the felony she allegedly committed is only complicity to commit first-degree assault and *not the actual acts* of first-degree assault, and thus the language in KRS 635.020(4)—which requires the firearm to be used in "that offense"—precludes application of the firearm provision to her. But under Kentucky law, a person who is complicit to an offense is treated as having committed the principal offense. "In Kentucky one who is found guilty of complicity to a crime occupies the same status as one being guilty of the principal offense." *Wilson v. Commonwealth*, 601 S.W.2d 280, 286 (Ky.1980). Such a defendant is "actually tried and [can be] found guilty of the principal offense." *Id.*

In this case, the "offense" that Appellant would be guilty of is the assault committed by the other juvenile who shot the victim. A gun was used in that offense. *Actual* use of the gun by the accomplice is not required to be guilty of complicity to commit first-degree assault; rather, the complicit defendant is treated *as if she* used the gun, can be convicted of first-degree assault, and is subject to the same penalties as the principal actor. Thus, the crime with which Appellant was charged was one in which a firearm was used (assuming, of course, the Commonwealth's evidence supports its allegations).

■ That liability for the principal offense is imputed to the accomplice is quite clear in our law. The Appellant's reading would only work if the accomplice liability statute created a different offense of complicity. But as this Court has held, "Complicity liability under KRS 502.020 is not an inchoate offense, such as the offenses described in KRS Chapter 506, e.g., criminal facilitation, KRS 506.080.... However, unlike an inchoate offense, 'KRS 502.020 does not create a new offense known as complicity.'" *Parks v. Commonwealth*, 192 S.W.3d 318, 326–27 (Ky.2006) (quoting *Commonwealth v. Caswell*, 614 S.W.2d 253, 254 (Ky.App.1981)). Rather than being a separate crime, complicity is simply the *means* of committing another crime. *See Finney v. Commonwealth*, 638 S.W.2d 709, 710 (Ky.App.1982) ("The complicity definition merely presented to the jury a variety of duplicitous ways by which he may have done it. Each possibility, however, is not to be viewed as a separate or alternative theory. 'Complicity' was definitional, not substantive."), *overruled on other grounds by Hibbard v. Commonwealth*, 661 S.W.2d 473 (Ky.1983).

Nonetheless, due to the greater leniency toward juvenile defendants espoused by the juvenile code, Appellant argues that KRS 635.020(4) could be read to say that the Appellant did not use a firearm in the commission of *that offense* of complicity to commit assault.

The transfer statute requires that if a juvenile defendant is charged with a *felony*, the juvenile *shall* be transferred to circuit court if a firearm was used in the commission of *the* offense (and if she was age 14 at the time of the commission of the offense). All this requires is that there be a felony charge (which complicity to first-degree assault is), and that a firearm be used in commission of the felony (which is unquestionably the case here). Further,

there is no language in KRS 635.020(4) stating that the firearm must actually be used by the juvenile charged. The statute only requires that the firearm be used in the commission of the felony the juvenile is charged with, not that the juvenile was the one who wielded the firearm.

■ Because the transfer language in the statute is mandatory, and because of the obvious policy the legislature has expressed with regard to juveniles using firearms in crimes, this Court finds that complicity to commit an offense involving use of a firearm requires transfer when an offense involving direct use of a firearm would. The legislature has recognized the seriousness of juvenile crimes of violence, especially those related to gang activity. The risk to the public from juveniles, who are thought to be less capable of good judgment, using firearms to settle disputes is even more frightening than adults doing so, and is likewise properly controlled by governmental action.

### 2. The District Court Erred in Finding that a Firearm Was Not Used in Appellant's Offense.

That a firearm offense committed by means of complicity *can* be the basis of transfer under KRS 635.020(4) does not mean that all such charged offenses must be transferred. The charge alone does not decide whether a transfer occurs. Transfer only occurs for such charges

> if, following a preliminary hearing, the District Court finds probable cause to believe that the child committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony.

KRS 635.020(4). The question, then, is whether the district court erred in finding no probable cause in this case.

When the juvenile does not directly use the firearm, but is charged with a complicity offense, the record must reflect sufficient evidence to show probable cause that complicity has occurred. Since this review occurs at the charging stage, rather than at a trial of guilt or innocence, this means that there must be allegations which, if true, would support a probable cause finding that the juvenile "act[ed] with the kind of culpability with respect to the result that is sufficient for the commission of the offense" when she solicited or conspired with others, aided in planning or committing the offense, or failed to prevent the offense when legally required to do so. KRS 502.020(2).[4]

Thus, when the principal offense is a result offense, KRS 502.020(2) requires that in order to be guilty of the crime by complicity, a defendant must act with the culpability required to obtain the *result* of the charged offense, and cause that particular result as an element of the offense by soliciting or conspiring with another; aiding another in planning or committing the offense; or failing to make a proper effort to prevent the offense when there is a legal duty to do so. Use of a deadly weapon or dangerous instrument to cause serious physical injury is the necessary element which separates first- and second-degree assault, and those elements are present here. However, to support first-degree assault by complicity, the proof in a youthful offender transfer hearing must further establish allegations that the accused was indeed *complicit.*

---

4. Because assault is a "result offense," KRS 502.020(2) is applicable. Other offenses fall under KRS 502.020(1).

■ Here, according to the officer's testimony at the hearing, Appellant solicited the help of J.L., the actual shooter, to help reclaim her property or punish the victim for taking it. She was fully aware that J.L. had a firearm and that the shooter was willing to fire it into an apartment, because she was present when he fired it into the wrong apartment, yet she continued with him and directed him to the correct one. It can reasonably be inferred from such conduct that she intended the gun to be fired into the correct apartment to shoot the victim and that she intended a serious physical injury from that shot. Returning to the language of the complicity statute, these allegations, if true, would be sufficient to show that Appellant acted with the kind of culpability required for first-degree assault (she intended to cause serious physical injury by means of a deadly weapon), and she either solicited another person to engage in the conduct causing such result, or she aided or attempted to aid another person in engaging in the conduct causing the result. KRS 502.020. Therefore, the evidence here supports a finding that Appellant committed complicity to first-degree assault of the victim sufficient to require transfer to circuit court under the youthful offender statutes.

This case can be contrasted with *Chipman v. Commonwealth*, 313 S.W.3d 95 (Ky.2010), in which this Court held that the evidence did not support a finding that the juvenile defendant used a firearm or was complicit in the use of a firearm. In *Chipman*, the juvenile defendant entered a guilty plea to second-degree robbery, after being transferred to circuit court based on charges of first-degree robbery, first-degree burglary and second-degree assault. *Id.* at 96. She had solicited help in retrieving property she had put up as collateral for drugs, which the victim had refused to return to her. *Id.* One of the males who went with her had a gun which he used to pistol whip the victim and then stole several items. *Id.* No evidence other than Chipman's plea colloquy was introduced at the guilty plea. *Id.* at 99. She testified that she did not know that the man with her had the gun. *Id.* at 96. Because there was no evidence that Chipman had personally used the gun, or that she was complicit in its use, this Court determined that she must be sentenced as a juvenile because the offense to which she pleaded was otherwise exempt from youthful offender sentencing. *Id.* at 98–100. The only proof in the record could not establish that she directly used the firearm or intended the result that occurred through another's use of a firearm (complicity).

It is important, however, to note here that a transfer hearing occurs at the *charging* stage of the proceedings, whereas *Chipman* addressed the requirements for adult sentencing after transfer and conviction. The standard to be applied at the transfer stage is whether there is probable cause to believe the crime has been committed (complicity to commit first-degree assault) and whether a firearm was used in the commission of that offense. Whether the evidence would ultimately support a conviction, or whether there are appropriate defenses, is not germane at this point in the proceedings. Instead, the trial court is only deciding whether, under the evidence, it is appropriate for a case to be transferred to circuit court under the youthful offender statute. For example, at the transfer hearing in this case, there was some testimony that would tend to show that Appellant was not complicit. But this evidence should not control the outcome of the hearing because there was also testimony, described above, that would establish probable cause that Appellant was complicit to the first-degree assault.

There was ample evidence to support a finding of probable cause that Appellant committed a felony, that she was at least fourteen years old at the time the felony was committed, and that a firearm was used in the commission of the felony under a complicity theory. The district court's decision finding otherwise was mistaken both as to what the evidence supported and whether the juvenile has to personally use the gun. The court's finding that Appellant neither knew nor asked that the gun be used exemplifies this dual mistake, since it assumed that complicity to the assault and complicity to use of the firearm were different things. More problematically, this finding conflicted with the previous finding of probable cause to believe Appellant committed assault by complicity.

Having found that personal use is not necessary when the defendant is accused of being an accomplice to an offense in which another person uses a firearm, having recognized that under Kentucky law an accomplice is guilty of the offense committed by the principal, and being convinced that the evidence was sufficient to compel a finding of at least probable cause, this Court concludes that the district court erred when it failed to transfer Appellant's case to circuit court so that she could be tried as an adult for these crimes.

### C. The Writ Was Properly Issued.

Appellant argues that even if the district court erred, a writ of mandamus should not have been entered by the circuit court ordering transfer, and that the Court of Appeals erred in affirming because this error does not interfere "with the orderly administration of justice."

This Court cannot agree. It is the legislature which defines the parameters of justice by enacting statutes that govern the criminal justice process. It has enacted a policy-based statute that recognizes the danger to citizens and wrong to victims when youthful offenders use firearms in the commission of offenses, which sets such a juvenile offender apart from other juvenile offenders. That policy has limits, such as the types of offenses to be transferred (felonies) and the age necessary for transfer (fourteen). This Court cannot say that KRS 635.020(4) violates any constitutional mandate or is otherwise inapplicable. Because there is no adequate remedy by appeal, and because allowing the error to go uncorrected at this point in the proceedings would defeat the administration of justice as prescribed by the legislature, the writ of mandamus issued by the circuit court was not an abuse of discretion and was therefore appropriate.

### III.  CONCLUSION

The Court of Appeals is affirmed, and the writ of mandamus issued by the circuit court shall be effective immediately.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER and SCOTT, JJ., concur.

VENTERS, J., concurs in result only.