RENDERED: DECEMBER 14, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0304-DG

COMMONWEALTH OF KENTUCKY                                        APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2021-CA-0873
JEFFERSON CIRCUIT COURT NO. 21-CR-000186

PARADISE BURKHEAD                                               APPELLEE

**OPINION OF THE COURT BY JUSTICE BISIG**

**REVERSING AND REMANDING**

Paradise Burkhead was charged with crimes committed while she was a juvenile. Based on a juvenile transfer statute in effect at the time, which required mandatory transfer if a juvenile over fourteen years old committed a felony with a firearm, the Jefferson District Court transferred her case to the Jefferson Circuit Court for prosecution as an adult. Subsequently, a new juvenile transfer statute took effect which eliminated the mandatory transfer requirement and instead vested district courts with sole discretion to determine, based on prescribed factors, whether a juvenile firearm case should be transferred to a circuit court. Kentucky Revised Statute (KRS) 635.020(4). Burkhead sought to take advantage of this new statute by a motion to transfer her case back to district court for a second transfer hearing. Over the Commonwealth's objection, the circuit court granted the motion.

The Commonwealth filed an interlocutory appeal from the district court's transfer order and the Court of Appeals affirmed. This appeal followed. After careful review, we conclude that the interlocutory appeal was proper and that the circuit court erred by ordering a second transfer hearing. While we live in a society that understandably embraces second chances, the duly enacted transfer statute in effect at the time of Burkhead's hearing must control. A second chance is not a "do-over" of a critical stage of a criminal proceeding. Burkhead will have a full resolution of her legal issue in circuit court.

## FACTS AND PROCEDURAL HISTORY

Paradise Burkhead was charged with complicity to commit murder and fourth-degree assault stemming from her participation in a series of offenses on November 21, 2020 while she was a juvenile. Burkhead snuck out of her house and joined four others, three of whom were over eighteen years old. While walking down a street in downtown Louisville, one of the group members fired a gun several times into a house. Later, the group was recorded by video surveillance attacking an individual on a sidewalk. Then, they walked to the area of Sixth Street and River Road where someone in the group shot and killed Rocky Seibert.[1]

Since Burkhead was under eighteen at the time of the offenses, the Commonwealth filed a juvenile petition in December 2020. On December 21,

---

[1] It is unclear whether Burkhead fired the gun or ever had possession of it. In her brief, Burkhead states it is not alleged that she fired the gun or had possession of it, while the Commonwealth merely indicates that one of the group members fired the gun.

2020, the district court held a hearing to determine whether to transfer the case to circuit court for prosecution as an adult. At the time of the hearing, KRS 635.020 was in effect and required a district court to transfer a juvenile to circuit court to be tried as an adult upon a finding of probable cause that the juvenile committed a felony in which a firearm was used, and that the juvenile was over age fourteen at the time of the offenses. Pursuant to the statute, the district court transferred Burkhead's case to circuit court.

On March 4, 2021, Burkhead filed a motion in circuit court to remand her case back to district court for a new transfer hearing. In part, Burkhead relied on a proposed amendment to the juvenile transfer statute. This proposed amendment, which eventually became effective on June 29, 2021, no longer requires mandatory transfer of juvenile cases in which the juvenile was over fourteen years old and committed a felony involving a firearm. The Commonwealth opposed the motion, arguing that Burkhead's case was unaffected by the amendment because her transfer hearing already occurred.

On July 9, 2021, the circuit court granted Burkhead's motion to remand the case to district court for a second transfer hearing. The circuit court based its ruling on the goals articulated as the reason for the statutory amendment and not a procedural analysis. While the circuit court recognized that the district court did not err in originally transferring the case to circuit court under the juvenile transfer provision as it then existed, the circuit court opined that the amendment sought to keep juveniles in district court, except in the rarest of circumstances.

3

The Commonwealth appealed pursuant to KRS 22A.020(4), which allows the Commonwealth to appeal adverse interlocutory orders in criminal cases. The Commonwealth also sought emergency and intermediate relief from the Court of Appeals, which stayed the proceedings during the pendency of the Commonwealth's appeal.

In its opinion, the Court of Appeals cited KRS 446.110, which governs the retroactive application of criminal statutes:

> [n]o new law shall be construed to repeal a former law as to any offense committed against a former law, . . . or in any way whatever to affect any such offense or act so committed or done, . . . before the new law takes effect, except that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings. . . .

Burkhead and the Commonwealth agree that the juvenile transfer statute is procedural, meaning it pertains to "the in-court procedures and remedies which are used in handling pending litigation." *Rodgers v. Commonwealth,* 285 S.W.3d 740, 751 (Ky. 2009) (citation omitted). Relying on *Rodgers,* a unanimous Court of Appeals panel reasoned that amendments to procedural laws are to be applied retroactively so that the proceedings conform to the law in effect at the time of the proceedings. The Commonwealth argued that the amendment should only apply to cases still pending in juvenile court, prompting the Court of Appeals to analyze "proceedings" as used in KRS 446.110.

Ultimately, the Court of Appeals determined that "the plain meaning of 'proceedings' under KRS 446.110 means amended statutes apply retroactively in any case with no final decision on the merits." The appellate court then

4

turned to the legislative intent of the Kentucky Unified Juvenile Code which is to rehabilitate and reform delinquent youth. KRS 600.010(2). The Court of Appeals reasoned that the plain language of KRS 446.110 and the express legislative intent for the Juvenile Code support the circuit court's decision to remand Burkhead's case for a new transfer hearing because "the proceedings against her are ongoing as she has not yet been convicted or acquitted under the indictment."

This appeal followed. In granting discretionary review, this Court specifically directed the parties to address the threshold question of whether KRS 22A.020(4) permits the Commonwealth to appeal from a circuit court order remanding a juvenile's case to district court for a second transfer hearing.

## ANALYSIS

The issues on appeal are (1) whether the Commonwealth's interlocutory appeal is proper and (2) whether remanding the case for a second transfer hearing was proper. Both issues involve statutory interpretation—questions of law which we review *de novo. Commonwealth v. B.H.,* 548 S.W.3d 238, 242 (Ky. 2018). We address each issue in turn.

**I.     The Commonwealth's interlocutory appeal pursuant to KRS 22A.020(4) is proper.**

To determine whether KRS 22A.020(4) permits the Commonwealth to appeal from a circuit court order remanding a juvenile's case to district court

for a second transfer hearing, we turn to the plain language of the statute.

KRS 22A.020(4) states that

> [a]n appeal may be taken to the Court of Appeals by the state in criminal cases from an adverse decision or ruling of the Circuit Court, but only under the following conditions:
>
> (a) Such appeal shall not suspend the proceedings in the case.
>
> (b) Such appeal shall be taken in the manner provided by the Rules of Criminal Procedure and the Rules of the Supreme Court, except that the record on appeal shall be transmitted by the clerk of the Circuit Court to the Attorney General; and if the Attorney General is satisfied that review by the Court of Appeals is important to the correct and uniform administration of the law, he may deliver the record to the clerk of the Court of Appeals within the time prescribed by the above-mentioned rules.
>
> (c) When an appeal is taken pursuant to this subsection, the Court of Appeals, if the record so warrants, may reverse the decision of the Circuit Court and order a new trial in any case in which a new trial would not constitute double jeopardy or otherwise violate any constitutional rights of the defendant.

Section 111(2) of the Kentucky Constitution grants the General Assembly authority to "prescribe the appellate jurisdiction of the Court of Appeals." *Commonwealth v. Farmer,* 423 S.W.3d 690, 692 (Ky. 2014). By enacting KRS 22A.020(4), the General Assembly created a statutory matter-of-right appeal from interlocutory orders for the Commonwealth in criminal cases. *Ballard v. Commonwealth,* 320 S.W.3d 69, 73 (Ky. 2010). Despite challenges to KRS 22A.020(4), this Court has consistently upheld its constitutionality. *See, e.g., id.; Commonwealth v. Littrell,* 677 S.W.2d 881, 885 (Ky. 1984), *overruled on other grounds by Commonwealth v. Bailey,* 71 S.W.3d 73, 80 (Ky. 2002).

6

Based on the plain language of KRS 22A.020(4), the conditions for the Commonwealth to bring an interlocutory appeal of an adverse ruling in a criminal case are clear: the appeal must not suspend the proceedings, must be taken under the normal rules, and must be approved by the Attorney General as "important to the correct and uniform administration of the law." KRS 22A.020(4)(b).

The conditions are satisfied here. The circuit court ruling transferring the case back to district court for a second transfer hearing was adverse to the Commonwealth. Adverse is defined by *Black's Law Dictionary* as "(1) Against; opposed to. (2) Having an opposing or contrary interest, concern, or position."[2] The case was originally properly transferred to circuit court under a then-existing statute, allowing the Commonwealth to prosecute. If the case were ultimately to be tried in district court, the Commonwealth would lose the ability to prosecute the case, which instead would be handled by the County Attorney's Office. Further, the penalty and ultimate resolution will differ depending on the outcome of the transfer decision. Therefore, a transfer back to district court coupled with the possibility that the district court may rule to keep the case in district court after a second transfer hearing opposed the Commonwealth's interests.

Additionally, the interlocutory appeal has not suspended the proceedings as that term is used in KRS 22A.020(4). For over forty years, this Court has

---

[2] Adverse, *Black's Law Dictionary* (11th ed. 2019).

7

interpreted the term "proceedings" in KRS 22A.020(4) "to refer only to proceedings after the attachment of jeopardy, and we will not change course today." *Smith v. Commonwealth*, 636 S.W.3d 421, 442 (Ky. 2021). Jeopardy attaches when the jury is sworn, *Cardine v. Commonwealth,* 283 S.W.3d 641, 646 (Ky. 2009), and, in a bench trial, jeopardy attaches when the court begins to hear evidence. *Serfass v. United States,* 420 U.S. 377, 388 (1975). Jeopardy has not yet attached in Burkhead's case, so the proceedings are not being suspended by the Commonwealth's interlocutory appeal.

As required by KRS 22A.020(4)(b), the appeal is following the normal rules and procedures. Finally, the record indicates that the Attorney General appointed counsel to serve as Special Assistant Attorney General and granted the authority to represent the Commonwealth and proceed under the Attorney General's name in this interlocutory appeal. This serves as the Attorney General's affirmation that appellate review "is important to the correct and uniform administration of the law." KRS 22A.020(4)(b). *See Smith,* 636 S.W.3d at 440 (presuming that the Attorney General reviewed the case based on him "being listed as counsel and in assigning a Special Assistant Attorney General to the appeal").

Two years after the General Assembly enacted KRS 22A.020(4) this Court addressed the statute in *Eaton v. Commonwealth,* 562 S.W.2d 637, 639 (Ky. 1978), and held that a writ of prohibition preventing a trial court from suppressing evidence was not warranted because a writ should not control a trial court's discretionary acts done within its jurisdiction. In exploring the

8

Commonwealth's available remedies, the Court explained that a Commonwealth's Attorney seeking an appeal of a trial court's discretionary ruling has a remedy through KRS 22A.020(4). *Id.* "Unless the constitutional right to a speedy trial were unduly threatened, we see no reason why an interlocutory 'ruling' entered prior to trial, **if it decides a matter vital to the Commonwealth's case**, could not be reviewed by appeal." *Id.* (emphasis added).

We take this opportunity to clarify that we interpret the *Eaton* Court's statement that an interlocutory appeal under KRS 22A.020(4) must raise "a matter vital to the Commonwealth's case" as simply another way of stating the statute's express requirement that in order for the state to appeal an adverse ruling in a criminal case, the Attorney General must be "satisfied that **review by the Court of Appeals is important to the correct and uniform administration of the law** . . . ." (Emphasis added). "[T]he requirement that the Attorney General review the appeal before docketing it in the Court of Appeals is a purely administrative act, designed to eliminate frivolous, vexatious or meritless appeals." *Littrell,* 677 S.W.2d at 885.[3]

By enacting KRS 22A.020(4), the legislature has specifically prescribed the conditions which must be met for the Commonwealth to pursue an

---

[3] KRS 22A.020(4) leaves the Attorney General with discretion in determining whether to pursue appeals. We note that generally, the Attorney General, as a constitutionally elected official, "is entrusted with broad discretion in the performance of his duties, which includes evaluating the evidence and other facts to determine whether a particular claim should be brought." *Overstreet v. Mayberry,* 603 S.W.3d 244, 265 (Ky. 2020).

9

interlocutory appeal in a criminal case and the "matter vital to the Commonwealth's case" language in *Eaton* is merely further explanation of the requirement that the Attorney General determine a matter is "important to the correct and uniform administration of the law." This premise is supported by later cases, like *Evans v. Commonwealth,* 645 S.W.2d 346 (Ky. 1982), in which the Court allowed the Commonwealth to use KRS 22A.020(4) to appeal an order transferring a Medicaid fraud prosecution from Franklin County to the defendants' home counties. In that case, the Court effectively allowed an interlocutory appeal from a decision pertaining to which court would preside over a case. Later, in *Commonwealth v. Bass,* 777 S.W.2d 916, 917 (Ky. 1989), this Court allowed an interlocutory appeal from a circuit court's dismissal of numerous counts of an indictment because "the action of the trial court ha[d] adversely affected an issue which is vital to the Commonwealth." (citing *Eaton,* 562 S.W.2d 637).

Here, the Commonwealth appealed from the circuit court order transferring Burkhead's case back to district court for a second transfer hearing—a decision adverse to the Commonwealth's position that the case should be tried in circuit court, as previously determined by the district court as it applied the then-existing juvenile transfer statute. Again, if the case were ultimately to be tried in district court, the County Attorney, not the Commonwealth's Attorney, would prosecute the case. Because the Attorney General, acting as gatekeeper to "eliminate frivolous, vexatious or meritless appeals," *Littrell,* 677 S.W.2d at 885, determined that review by the Court of

10

Appeals was "important to the correct and uniform administration of the law," the final condition as expressly stated in KRS 22A.020(4)(b) is satisfied and we conclude that the interlocutory appeal is proper.

Finally, although we hold today that the Commonwealth's appeal of the circuit court order remanding Burkhead's case to district court for a new transfer hearing is proper, our holding should not be interpreted as endorsing or otherwise approving a general right to an interlocutory appeal of a district court decision denying transfer. The issue before us today satisfies KRS 22A.020 because it deals with the retroactivity of a statute, which the Attorney General was wholly within his authority to determine was "important to the correct and uniform administration of the law."

## II. The circuit court erred by remanding the case for a new transfer hearing.

The next issue is whether the circuit court correctly remanded Burkhead's case to district court for a second transfer hearing. To resolve this issue, we must first determine whether the 2021 amendment to the juvenile transfer statute applies retroactively pursuant to KRS 446.110. Statutory interpretation is a question of law, which we review *de novo*. *B.H.,* 548 S.W.3d at 242.

KRS 446.110 provides that

11

> [n]o new law shall be construed to repeal a former law as to any offense committed against a former law, . . . or in any way whatever to affect any such offense or act so committed or done, . . . before the new law takes effect, except that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings. . . .

If a statute is silent as to whether it applies retroactively, this Court has determined that it nonetheless applies retroactively if it is procedural in nature. *Rodgers,* 285 S.W.3d at 751.

The parties agree that the change to the juvenile transfer statute was procedural. However, the Commonwealth argues that the amendment should only apply to cases still pending in juvenile court. Procedural amendments, which apply to in-court procedures and remedies used in handling pending litigation, are "to be retroactively applied (assuming no separation-of-powers concerns) so that the proceedings 'shall conform, so far as practicable, to the laws in force at the time of such proceedings.'" *Id.* (quoting KRS 446.110). In *Smith v. Commonwealth,* 400 S.W.3d 742, 745 (Ky. 2013), the Court further explained that one of the "distinct pronouncements" made by KRS 446.110 is that "**proceedings that take place after a new law takes effect shall**, so far as practicable, **conform to the laws at the time of the proceeding**." (Emphasis added).

The Court of Appeals determined that the proper resolution of Burkhead's case hinged on the meaning of "proceedings" as used in KRS 446.110. With no Kentucky caselaw defining "proceedings," the appellate court reviewed *Black's Law Dictionary,* and referenced this Court's explanation in

12

*Rodgers*, 285 S.W.3d at 751, that amendments "used in handling pending litigation" are procedural. The Court of Appeals thus concluded that "'proceedings' under KRS 446.110 means amended statutes apply retroactively in any case with no final decision on the merits." The appellate court also went a step beyond discerning the plain meaning of "proceedings" and interpreted the statute according to legislative intent by focusing on the Juvenile Code's express intent to rehabilitate and reform delinquent youth.

The Court of Appeals' definition of proceedings is problematic. Effectively, the Court of Appeals determined that proceedings means the lifespan of a case, from filing to final judgment. But using that definition of proceedings in KRS 446.110 renders the statute illogical. If proceedings means the lifespan of a case, read literally, the statute would then allow a court to use any procedural rule that was in effect at some point during the case's lifespan. It would also require a multitude of "do-overs" when procedural amendments are enacted, thus jeopardizing judicial efficiency and economy. This overly broad interpretation would lead to inconsistent results and negate the authority of the General Assembly to amend statutes.

Instead, we find it more logical to construe proceedings as used in KRS 446.110 narrowly and as referring to the distinct phases of a case, i.e., arraignment, sentencing, suppression hearings, plea hearings, transfer hearings, etc. Defined in this manner, KRS 446.110 requires courts to apply the current procedural law governing the particular procedural phase being undertaken. That is, absent clear legislative intent to the contrary, a trial court

13

must always look to current procedural law when making procedural decisions in a case.

This narrow interpretation prevents the type of "do-over" scenarios that Burkhead seeks in this case. More importantly, it prevents an inevitable flood of "do-overs" from "pending litigation" cases in which a final judgment has not been entered, which is a particularly troubling thought given the multitude of cases that are "pending" for many years.

The proceeding at issue—Burkhead's original transfer hearing in district court—occurred six months before the statutory amendment she seeks to invoke. This procedural step thus occurred when the prior juvenile transfer statute required a district court to transfer a juvenile case to circuit court upon a finding of probable cause that a juvenile over age fourteen committed a felony in which a firearm was used. Once transfer was ordered by the district court in December 2020, that stage of the proceedings ended. Nothing in the plain language of KRS 446.110 suggests that a court must repeat a completed phase of the criminal process to comply with a procedural amendment. In fact, the statute is clear that "proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings." KRS 446.110. When interpreting a statute,

> we must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.

14

*Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (citations and quotations omitted). Because the statute is clear, the Court of Appeals' reliance on the purpose and intent behind the Juvenile Code, while well-intended, was misplaced. Further, the intent behind the Juvenile Code has no bearing on KRS 446.110 and whether the amended juvenile transfer provision applies retroactively. As a result, the post-transfer amendment to the juvenile transfer statute could not provide a basis for repeating the juvenile transfer hearing completed six months earlier.

## **CONCLUSION**

The Court of Appeals erroneously upheld the circuit court's remand of Burkhead's case to district court for a second transfer hearing. Burkhead's juvenile transfer hearing occurred when the prior statute was in effect, and thus that prior statute applies to that stage of the proceedings. As a result, we reverse the Court of Appeals and remand this case to the Jefferson Circuit Court for further proceedings.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Daniel J. Cameron
Attorney General of Kentucky

Jason B. Moore
Special Assistant Attorney General

Matthew F. Kuhn
Solicitor General

Daniel J. Grabowski
Assistant Solicitor General

15

COUNSEL FOR APPELLEE:

Tricia Lister
Rob Eggert