RENDERED: JUNE 14, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

DATE 7/6/18 *Kim Redmon, DC*

2017-SC-000155-DG

COMMONWEALTH OF KENTUCKY          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2015-CA-000709-DG
JEFFERSON CIRCUIT COURT NO. 14-XX-000013

B.H.          APPELLEE

## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

The Commonwealth seeks discretionary review of a decision affirming the Jefferson District Court Juvenile Session's finding that B.H. was incompetent to stand trial and dismissing the charges against him. The circuit court upheld, and the Court of Appeals affirmed. We granted the Commonwealth's motion for discretionary review to consider if the Juvenile Session of the District Court (district court) acted without jurisdiction in determining B.H.'s competency. After review of the record, we affirm.

### I. BACKGROUND.

B.H. was born on December 21, 1997. He has an extensive history of criminal charges, the first dating back to when he was nine years old. B.H.

was still a juvenile at the time of the charges in this case. It is not necessary for us to recount the details of B.H.'s criminal record, but among the charges incident to this case were terroristic threatening, robbery, and murder.

In 2008, when B.H. was 10 years old, following a petition charging him with first-degree sexual abuse and fourth-degree assault, Dr. David Finke was appointed to perform a competency evaluation. Dr. Finke found that B.H.'s intellectual functioning was extremely low or impaired; B.H. lacked a factual or rational understanding of the trial process; and B.H. lacked the ability to assist counsel in his defense. Dr. Finke found that B.H. was not competent to stand trial and that he would not likely gain competency within the statutory "foreseeable future" of one year.[1]

In 2010, a plethora of charges were again brought against B.H. Dr. Finke was appointed to perform a competency evaluation. Dr. Finke again found that B.H. was not competent to stand trial.

In 2011, after B.H. was charged for multiple new offenses, Dr. Finke performed another competency evaluation. Dr. Finke found B.H. incompetent to stand trial but stated that B.H. might gain competency within the foreseeable future due to his maturity and improved understanding of the court system. In 2012, after receiving additional charges, B.H. was found competent. Pending adjudication, B.H. was released on home incarceration.

In December 2012, B.H. was in an automobile accident and suffered severe injuries. B.H. was admitted to the hospital with no brain activity and

---

[1] Kentucky Revised Statute (KRS) 504.060(3).

2

remained in a coma until April 2013. In September 2013, B.H. was arrested for first-degree robbery and murder that had occurred the previous October before the automobile accident. The Commonwealth moved to transfer B.H.'s case to circuit court pursuant to KRS 635.020(2) and KRS 635.020(4), the statutes for discretionary and mandatory transfer, respectively. B.H. also moved for a competency evaluation.

The district court did not immediately address the motion to transfer but first granted B.H.'s motion for a competency evaluation. Dr. Finke performed the evaluation, detailing the effects of the automobile accident on B.H.'s physical and cognitive functioning, and found that B.H. was currently incompetent to stand trial. Dr. Finke acknowledged that it was possible for B.H. to continue to have improved brain functioning and gain competency within one year.

Dr. Brandon C. Dennis conducted a pediatric neuropsychological evaluation on B.H. and he filed his report with the court. Intelligence testing generated a full-scale IQ of 46. Dr. Dennis concluded that even though B.H. could continue to make subtle improvements within the next year, he would have persistent cognitive impairments, indefinitely.

The district court then conducted a competency hearing. After hearing from Dr. Finke and Dr. Dennis, the court found B.H. incompetent to stand trial and unlikely to attain competency in the foreseeable future. The pending charges were dismissed without prejudice. The Commonwealth appealed the finding of incompetency to the Jefferson Circuit Court, arguing that the district

3

court's decision was not supported by substantial evidence. The circuit court affirmed, holding that there was substantial evidence to support the finding.

The Commonwealth then moved the Court of Appeals for discretionary review. There, the Commonwealth abandoned its argument that the district court's decision was clearly erroneous and instead argued that the court acted without subject matter jurisdiction when it decided the issue of competency. The Court of Appeals held that the district court had subject matter jurisdiction over B.H.'s case, and the Commonwealth had confused subject matter jurisdiction with particular case jurisdiction. Because particular case jurisdiction is subject to waiver, and the Commonwealth failed to object to the competency determination at any stage of litigation prior to discretionary review with the Court of Appeals, the Court of Appeals held that the Commonwealth had waived its right to contest any error.

The Commonwealth then moved this Court for discretionary review, which we granted. We agree with the courts below and affirm.

## II. STANDARD OF REVIEW.

Jurisdiction is a question of law, and our review is *de novo*. *Caesar's Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 54 (Ky. 2011) (citing *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007)). Furthermore, "[s]tatutory interpretation raises pure questions of law, so our review is *de novo*, meaning we afford no deference to the decisions below." *Department of Revenue, Finance and Admin. Cabinet v. Cox Interior,*

4

*Inc.*, 400 S.W.3d 240, 242 (Ky. 2013) (citing *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011)).

## III. ANALYSIS.

### A. The Juvenile Session of the District Court had subject matter jurisdiction to conduct a competency hearing.

The Commonwealth's argument before us is that the Juvenile Session of the Jefferson District Court did not have subject matter jurisdiction to consider the issue of B.H.'s competency. According to the Commonwealth, once it filed a motion to transfer, the district court was limited to holding a transfer hearing pursuant to KRS 635.020(4) which states, in pertinent part:

> Any other provision of KRS 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a firearm, whether functional or not, was used in the commission of the offense had attained the age of fourteen(14) years at the time of the commission of the alleged offense, he shall be transferred to the Circuit Court for trial as an adult if, following a preliminary hearing, the District Court finds probable cause to believe that the child committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony.

The Commonwealth maintains that, because B.H. was charged with a felony in which a firearm was used and B.H. was fourteen years old at the time of the offense, the district court could only conduct a preliminary hearing regarding probable cause as to these enumerated factors. In essence, the Commonwealth argues the court's subject matter jurisdiction was limited to the preliminary hearing required for transfer. The Commonwealth's argument fails, however, as our

5

jurisprudence on both jurisdictional and constitutional issues does not support the Commonwealth's proposition.

### 1. The General Assembly has vested district courts with jurisdiction over juvenile cases.

The juvenile code assigns jurisdiction to the juvenile session of the district court for "any person who at the time of committing a public offense was under the age of eighteen (18) years. . . ." *Commonwealth v. S.K.*, 253 S.W.3d 486, 487 (Ky. 2008) (internal citations omitted). The code is intended to provide safeguards for juveniles. *Johnson v. Commonwealth*, 606 S.W.2d 622, 623 (Ky. 1980). The jurisdiction of district courts is exclusive relating to minors unless jurisdiction is vested by law in some other court. *See* KRS 24A.130.

A juvenile can be classified as a youthful offender and transferred to the circuit court. The "circuit court acquires jurisdiction over a case in which a juvenile is accused of violating the penal code *only if* the juvenile is alleged to be a youthful offender *and* the district court transfers the child to circuit court." *Jackson v. Commonwealth*, 363 S.W.3d 11, 17 (Ky. 2012) (emphasis added). Before the circuit court acquires jurisdiction, the district court must hold a preliminary hearing. *Id.* "Only after the district court satisfies these procedural hurdles does the circuit court acquire jurisdiction over the juvenile's case." *Id.* at 18. (internal citations omitted).

It is clear to this Court that the district court had jurisdiction over B.H. B.H. was a juvenile at the time of the offense. Any petition of charges against

6

him was required to be brought under the juvenile code, granting jurisdiction to the Jefferson District Court.

### 2. The Commonwealth confuses subject matter jurisdiction with particular case jurisdiction.

"It is fundamental that a court must have jurisdiction before it has authority to decide a case. Jurisdiction is the ubiquitous procedural threshold through which all cases and controversies must pass prior to having their substance examined." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005).

This Court's case law is replete with discussion and clarification of jurisdictional issues. In *Nordike v. Nordike*, we addressed the three types of jurisdiction: personal jurisdiction, subject matter jurisdiction, and jurisdiction over the particular case. 231 S.W.3d 733 (Ky. 2007). Subject matter jurisdiction is the court's power to hear and rule on a particular *type* of case and is absent "only where the court has not been given any power to do anything at all in such a case." *Id.* at 737-38 (quoting *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky. 1970) (quoting *In Re Estate of Rougeron*, 217 N.E.2d 639, 643 (N.Y. 1966) (emphasis added))).

On the other hand, there is particular case jurisdiction, which is the court's authority to decide a specific case, not just that type of case. "This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts, such as that an action was begun before a limitations period expired." *Nordike*, 231 S.W.3d at 738. "Once a court has acquired subject matter and personal jurisdiction, challenges to its

7

subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the existence of jurisdiction." *Commonwealth v. Steadman*, 411 S.W.3d 717, 722 (Ky. 2013) (internal citations omitted).

> Whether a court has subject matter jurisdiction is determined at the beginning of a case, based on the type of case presented. General subject matter jurisdiction should be determinable from the face of the charging document (the indictment) or other initial pleading (the complaint). Thus, a court 'will retain jurisdiction over such a case so long as jurisdiction was proper in the first place.

*Id.* (citing *Leonard v. Commonwealth*, 279 S.W.3d 151, 156 (Ky. 2009)).[2]

Once again, it is clear to this Court that the district court had subject matter jurisdiction over the Commonwealth's case against B.H. The charging document, the petition, was mandated to be filed in district court. The type of case is a juvenile offender case that must be heard, at least initially, by the district court. Only after the juvenile is presented to the Juvenile Session will any discussion of the circuit court's jurisdiction arise. As such, subject matter jurisdiction was properly vested in the Jefferson District Court at the time of the competency hearing.[3]

---

[2] *See also Commonwealth v. Adkins*, 29 S.W.3d 793, 795 (Ky. 2000) ("There is a presumption against divesting a court of its jurisdiction once it has properly attached, and any doubt is resolved in favor of retaining jurisdiction. Indeed, once a court has acquired jurisdiction, no subsequent error or irregularity will remove that jurisdiction, so that a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law, or both." (citations omitted)).

[3] The Commonwealth also cites to *K.R. v. Commonwealth*, 360 S.W.3d 179 (Ky. 2012) for the proposition that the General Assembly has found KRS 635.020(4) to be mandatory because of the seriousness of the use of guns by juveniles. The Commonwealth is correct that our legislature has found transfer proceedings to be supportive of the public policy "of essentially no tolerance of gun-related crimes by juveniles." *Id.* at 184. Despite this policy, the Commonwealth's reliance on *K.R.* is misplaced and runs afoul of its jurisdictional argument.

8

### 3. The Commonwealth waived its right to object to lack of particular case jurisdiction.

Subject matter jurisdiction cannot be waived or conferred by agreement, and a party may challenge a court's lack of subject matter jurisdiction any time, even for the first time on appeal. *Hisle v. Lexington-Fayette Urban County Government*, 258 S.W.3d 422, 431 (Ky. App. 2008) (citing *Nordike*, 231 S.W.3d

---

In *K.R.*, the district court denied the Commonwealth's motion to transfer and the Commonwealth filed a writ of mandamus with the circuit court. *Id.* at 182. The circuit court issued the writ and both the Court of Appeals and this Court affirmed. *Id.* at 183. The crux of this Court's decision rested with the classes of cases in which writs are available. As Justice Noble stated:

> The extraordinary writs are available in two classes of cases. *The first, which is not at issue here, requires, a showing that the lower court is acting without jurisdiction* and there is no remedy available from an intermediate court. The second class usually requires a showing of no adequate remedy by appeal and great and irreparable injury. . . . While it is true that writs are extraordinary remedies usually disfavored by the courts, there are "special cases" that merit entry of a writ when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is in "the interest of orderly judicial administration.

*Id.* (internal citations omitted) (emphasis added).

The Court went on to find that a writ was available to the Commonwealth because it had no adequate remedy by appeal and the district court's decision threatened the sound administration of justice. *Id.* at 184. Because the district court chose not to transfer the case, upon disposition, jeopardy would attach, and the Commonwealth would have no remedy by appeal or otherwise. *Id.*

The present case does not present the same conundrum of inadequate remedies for the Commonwealth. We have held that "a trial court's dismissal of an indictment based on a finding that the defendant is incompetent to stand trial is not a dismissal with prejudice unless it is designated as such. . . ." *Keeling v. Commonwealth*, 381 S.W.3d 248, 258 (Ky. 2012) (internal quotations omitted). "We further hold that prosecution of a criminal defendant originally found incompetent to stand trial for his alleged crimes is permissible upon a subsequent finding of competency to stand trial, so long as the later prosecution does not violate the defendant's Constitutional rights." *Id.* at 259. In this case, the Juvenile Session specifically dismissed the petition "without prejudice," allowing the Commonwealth to bring a subsequent petition upon B.H. being found competent. *K.R.* is clearly distinguishable and not applicable.

9

at 738.). Particular case jurisdiction, however, is subject to waiver. *Id.* (citing *Collins v. Duff*, 283 S.W.2d 179, 182 (Ky. 1955)).

Initially the Commonwealth appealed the district court's determination of competency, arguing that the record lacked substantial evidence to support the finding that B.H. was incompetent. It was not until the Court of Appeals, and ultimately this Court, granted discretionary review that the issue of jurisdiction was ever raised.

As stated above, subject matter jurisdiction is absent when the court lacks authority to make any decisions. That is not the case here. The Commonwealth's position notwithstanding, the district court had the authority to conduct the transfer hearing. Thus, the district court had authority to take *some* action and had proper subject matter jurisdiction over the case.

The Commonwealth's argument confuses lack of jurisdiction with a court's error or misuse of jurisdiction. The Commonwealth argues, in this case, that the district court could only conduct a hearing on the Commonwealth's motion to transfer B.H. to circuit court. The Commonwealth simultaneously argues that the district court had subject matter jurisdiction to conduct the transfer hearing but lacked the subject matter jurisdiction to consider competency. The Commonwealth concedes that district courts generally have subject matter jurisdiction to conduct competency hearings. The Commonwealth's argument, however adamantly phrased in subject matter terms, provides a quintessential example of particular case jurisdiction. And because the Commonwealth did not raise the issue of jurisdiction until it was

10

before the Court of Appeals, we must find that the Commonwealth has waived any right to contest the actions of the Jefferson district court. *Hisle*, 258 S.W.3d at 431.

**B. The statutory evolution of KRS 635.020 supports this result.**

Juvenile law is a relatively new body of jurisprudence. The juvenile code was enacted with the intent to rehabilitate juvenile offenders as opposed to the retributive nature of the penal code. *See Phelps v. Commonwealth*, 125 S.W.3d 237, 240 (Ky. 2004). "For this reason there are no distinctions made between violations, misdemeanors, or felonies for purposes of dispositions in juvenile court." *Id.* (citing *A.E. v. Commonwealth*, 860 S.W.2d 790, 793 (Ky. App. 1993)). Our General Assembly has tried to strike a balance with the juvenile code and courts' handling of penal offenses committed by juveniles. The evolution of this commitment to protect juvenile offenders is apparent in the evolution of the transfer statute.

KRS 635.020 was first enacted in 1986 and has undergone multiple amendments and revisions. In 1994, the statute looked only at the offenses charged in determining whether a juvenile was to be mandatorily transferred to circuit court. The juvenile was not entitled to a preliminary hearing regarding probable cause for the transfer.

> Any other provision of KRS Chapters 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a firearm was used in the commission of the offense had attained the age of fourteen (14) years at the time of the commission of the alleged offense, he shall be tried in the Circuit Court as an adult offender and shall be subject to the same penalties as an adult offender, except that until he reaches the age of eighteen (18) years, he shall be confined in a secure detention facility for juveniles or for

11

youthful offenders, unless released pursuant to expiration of sentence or parole, and at age eighteen (18) he shall be transferred to a facility operated by the Department of Corrections to serve any time remaining on his sentence.

In 1996, the General Assembly amended the statute to provide for mandatory transfer after the district court conducts a preliminary hearing:

> Any other provision of KRS Chapters 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a firearm was used in the commission of the offense had attained the age of fourteen (14) years at the time of the commission of the alleged offense, he shall be transferred to the Circuit Court for trial as an adult if, following a preliminary hearing, the District Court finds probable cause to believe that the child committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony. . . .

The present version of the statute took effect in 2002, to reflect the legislature's policy concerns regarding any use of firearms by juveniles.

> Any other provision of KRS Chapters 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a firearm, *whether functional or not*, was used in the commission of the offense had attained the age of fourteen (14) years at the time of the commission of the alleged offense, he shall be transferred to the Circuit Court for trial as an adult if, following a preliminary hearing, the District Court finds probable cause to believe that the child committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony (emphasis added).

The evolution of KRS 635.020(4) reflects the progression of society's general understanding of the juvenile justice system. Earlier versions provided for automatic transfer based on the charge alone. Later versions, and the current version, add the protections of "certain procedural safeguards, such as a preliminary hearing." *Pollini v.*

12

*Commonwealth*, 172 S.W.3d 418, 425 (Ky. 2005). It is this advancement in the law that persuades this Court to determine the General Assembly intended juveniles to remain under the jurisdiction of the district courts, except in the most extreme circumstances.

**C. The Federal Constitution and the laws of the Commonwealth support holding competency hearings, if necessary, prior to transfer proceedings.**

**1. Defendants have a constitutional due process right to a fair trial and with that includes the requirement that the defendant be competent to stand trial.**

The Commonwealth argues that the district court did not have the authority to address the issue of competency prior to addressing the issue of transfer to the circuit court. The Commonwealth relies on *Commonwealth v. DeWeese*, 141 S.W.3d 372 (Ky. App. 2003). In *DeWeese*, the Commonwealth moved for mandatory transfer pursuant to KRS 635.020(4) and, prior to the transfer hearing, DeWeese requested discovery. *Id.* at 374. Discovery was ordered, and the Commonwealth filed a writ of prohibition. *Id.* The Court of Appeals ultimately held that the district court had no jurisdiction to order discovery prior to ruling on the motion to transfer. *Id.* at 375-76.

*DeWeese* is distinguishable from the present case. "There is no general constitutional right to discovery in a criminal case . . . the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (internal quotations and citations omitted); *see also Porter v. Commonwealth*, 394 S.W.3d 382, 387 (Ky. 2011).

13

There exists both a federal constitutional right and a state statutory right to competency. "The [Fourteenth Amendment] due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is *substantial evidence* that a defendant is incompetent." *Padgett v. Commonwealth*, 312 S.W.3d 336, 347 (Ky. 2010) (internal citations omitted) (emphasis in original). "Relevant evidence includes 'a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence.'" *Id.* "This last factor makes clear that the relevant inquiry is whether there was substantial evidence when it was time to hold the hearing, which occurs after evaluative opinions on competence are filed with the court." *Id.*

The United States Supreme Court has held that, when determining competency, "the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. U.S.*, 362 U.S. 402, 402 (1960). This Court further discussed the statutory and constitutional rights to competency in *Woolfolk v. Commonwealth*:

> . . . when analyzing whether a defendant is competent to stand trial, two separate interests – a statutory right under KRS 504.100(1) and a constitutional right under the Fourteenth Amendment of the United States Constitution – are at stake. More importantly, we noted in *Padgett* that different standards govern those interests. Due process under the Fourteenth Amendment requires that where substantial evidence that a defendant is not competent exists, the trial court is required to conduct an evidentiary hearing on the defendant's competence to stand trial. In contrast, under KRS 504.100, "reasonable grounds to believe the defendant is incompetent to stand trial" mandates a

14

> competency examination, followed by a competency hearing. Thus, while the failure to conduct a competency hearing implicates constitutional protections only when substantial evidence of incompetence exists, mere "reasonable grounds" to believe the defendant is incompetent implicates the statutory right to an examination and hearing.

339 S.W.3d 411, 422 (Ky. 2011) (internal citations omitted).

"The Due Process Clause does not mandate different standards of competency at various stages of or for different decisions made during the criminal proceedings." *Godinez v. Moran*, 509 U.S. 389, 404 (1993) (Kennedy, J., concurring). It was well within the district court's discretion to decide the issue of competency prior to the transfer motion.

Capacity or competency to stand trial is addressed in several ways in our precedent. Rule of Criminal Procedure (RCr) 8.06 states:

> If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant lacks the capacity to appreciate the nature and consequences of the proceedings against him or her, or to participate rationally in his or her defense, all proceedings shall be postponed until the issue of incapacity is determined as provided by KRS 504.100.

KRS 504.100(1) provides that "If upon arraignment, or during any stage of the proceedings, the court has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition."

The Juvenile Code provides that all hearings "shall be conducted in accordance with the Kentucky Rules of Criminal Procedure unless otherwise provided." KRS 645.070(1). The juvenile also has the right to

15

be present at any hearing and has the right to cross-examine witnesses and to present testimony. KRS 645.070(3) and (4).

> Level of competence required to permit a child's participation in juvenile court proceedings is no less than the competence demanded for trial or sentencing of an adult, i.e., children, like adults, must be able to understand the nature of the proceedings against them and to participate in their own defense; determination of competency, even in the context of juvenile adjudicatory proceedings, is a *fundamental right*, and dispositions in juvenile proceedings, including rehabilitative dispositions, may involve both punishment and a substantial loss of liberty.

H. Eugene Breitenbach, Juvenile Court Proceedings, 14 Am. Jur. Trials 619, at § 5 (2018) (emphasis added). Included in the requirement that a defendant must be competent to stand trial is the proposition that a defendant be able to assist in his defense. *Ford v. Wainwright*, 477 U.S. 399, 421 (1986) (citing *Drope v. Missouri*, 420 U.S. 162 (1975)). Compliance with these rules can only occur if the defendant, adult or juvenile, is competent to be able to assist counsel in the defense.

**2. Transfer hearings are critical stages requiring effective assistance of counsel and a finding of competency attaches at the transfer stage.**

A defendant has a right to be present at every *critical stage* of a proceeding. *See* RCr 8.28; *Commonwealth v. B.J.*, 241 S.W.3d 324 (Ky. 2007); Section 11 of the Kentucky Constitution; *Price v. Commonwealth*, 31 S.W.3d 885, 892 (Ky. 2000); U.S.C.A. Const. Amend. 6. The United States Supreme Court has held that transfer hearings are critically important proceedings. *See Kent v. U.S.*, 383 U.S. 541, 560 (1966).

16

"Neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In Re Gault,* 387 U.S. 1, 13 (1967).

> The rights to confront one's accusers, to cross-examine witnesses, to present evidence and testimony of one's own, to be unaffected by prejudicial and unreliable evidence, to participate meaningfully in the dispositional decision, to take an appeal have substantial meaning for the overwhelming majority of persons brought before the juvenile court only if they are provided with competent lawyers who can invoke those rights effectively.

Id. at n. 65.

"The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice." *Kent,* 383 U.S. at 561. "Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams,* 430 U.S. 387, 398 (1977) (internal citations omitted).

"The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that in all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence [*sic*]. The core of this right has historically been, and remains today, the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v. Ventris,* 556 U.S. 586, 590 (2009) (internal quotations and citations omitted).

17

Effective assistance requires counsel to move for a hearing if and when a defendant's competency may be at issue. This is so because inherent in effective representation is a client who can also assist in the preparation of a defense. A juvenile, and B.H. herein, has the right to present testimony and cross-examine witnesses at a preliminary hearing. *See* KRS 645.070(3) and (4). Had the district court not considered the issue of competency, it would have infringed on B.H.'s right to effective assistance of counsel. As such, this provides yet another reason for our affirmance of the court's actions.

In closing, we note that this case presents a cautionary tale regarding our treatment of juveniles. B.H., while possibly a danger to himself, was, most certainly, a danger to others. He was raised and in the custody of his grandmother. We cannot help but wonder about the management of B.H.'s life and whether or not some intervention by social services, our court system, or otherwise, might have served to minimize the tragedy in this story. While this Court has no doubt about B.H.'s incompetency, we should strive to balance the interests of rehabilitating juveniles, reunifying families, and protecting society from public offenses.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the district court's determination of competency prior to the transfer hearing. Not only did the district court have jurisdiction to make this determination, the fundamental notions of justice and

18

both our state and federal constitutions mandate this action. As such, we affirm.

All sitting. Minton, C.J., Cunningham, Hughes, Keller, Venters and Wright, JJ., concur. VanMeter, J., concurs in result only.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Michael J. O'Connell
Jefferson County Attorney

Christopher Brown
Special Assistant Attorney General – Assistant Jefferson County Attorney

David A. Sexton
Special Assistant Attorney General – Assistant Jefferson County Attorney

COUNSEL FOR APPELLEE:

Daniel T. Goyette
Louisville Metro Public Defender of Counsel

Elizabeth Zilberberg
Louisville Metro Public Defender

Bruce P. Hackett