RENDERED:  JANUARY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0572-MR

SARAH J. ALBRO AND DAVID A.
SOMMER                                                           APPELLANTS

|       | APPEAL FROM JEFFERSON CIRCUIT COURT |
|-------|-------------------------------------|
| v.    | HONORABLE ANGELA J. JOHNSON, JUDGE  |
|       | ACTION NO. 10-CI-502003             |

GARY SOMMER AND REBECCA
SOMMER                                                            APPELLEES

AND

NO. 2022-CA-0574-MR

SARAH J. ALBRO AND DAVID A.
SOMMER                                                           APPELLANTS

|       | APPEAL FROM JEFFERSON CIRCUIT COURT |
|-------|-------------------------------------|
| v.    | HONORABLE ANGELA J. JOHNSON, JUDGE  |
|       | ACTION NO. 10-CI-502003             |

GARY SOMMER AND REBECCA
SOMMER                                                            APPELLEES

AND

SARAH J. ALBRO AND DAVID A.
SOMMER                                                                    APPELLANTS

                                APPEAL FROM JEFFERSON FAMILY COURT
v.                              HONORABLE ANGELA J. JOHNSON, JUDGE
                                ACTION NO. 10-CI-502003

GARY SOMMER AND REBECCA
SOMMER                                                                    APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, KAREM, AND LAMBERT, JUDGES.

GOODWINE, JUDGE:  In pursuing reinstatement of grandparent visitation with

the minor child, paternal grandparents, Gary Sommer and Rebecca Sommer

("grandparents"), filed three separate motions requesting the court to direct the

minor child to participate in specific therapeutic services with therapists of

grandparents' choosing at grandparents' expense.  The family court granted all

three motions.  Parents, Sarah J. Albro and David A. Sommer ("Parents")

appealed.  After careful review, we reverse and remand.

The minor child was born to parents on February 14, 2009.[1] On June 2, 2010, grandparents petitioned for grandparent visitation with the minor child alleging they regularly cared for the child up to five nights per week and provided for him financially and emotionally. The parents filed a response to the petition and counterclaim denying it was in the child's best interest to have an ongoing specific grandparent visitation schedule. The parents claimed grandparents had liberal visitation with the child until they became overly possessive and refused to return the child to his parents. The parents stated they were willing to continue with visitation one night per week if the grandparents agreed to return their child when they came to pick him up and stop using Child Protective Services as a threat against parents.

The parents then moved to dismiss the action arguing grandparents had no basis for visitation under KRS[2] 405.021. Grandparents requested more time to respond to the motion and moved for mediation. The family court ordered the parties to attend mediation and set a hearing for the parents' motion to dismiss. Grandparents responded to the motion to dismiss.

---

[1] The parents were not married, but cohabitated. David acknowledged paternity and his name is on the child's birth certificate.

[2] Kentucky Revised Statutes.

The parties attended mediation and reached an agreed temporary visitation schedule. On September 16, 2010, the family court entered the temporary agreed order into the record. The parties agreed grandparents would have visitation with the child every Wednesday at 7:00 p.m. through Thursday at 7:00 p.m. and agreed to a holiday and birthday schedule. The order stated the "terms of this agreement shall remain in full force and effect until 3/1/11. The parties shall thereafter determine either by Agreement or Court order the extent and nature of [grandparents'] contact with [the minor child]." Record ("R.") at 33. No final visitation order was ever entered, and no other events occurred until 2021.

The parties agreed to continue a visitation schedule, with some modifications over the years without the family court's involvement until 2021. Around January 2020, the child began returning from grandparent visitation upset. Parents sought therapy for the child. In May 2021, the parents and the child's therapist informed the grandparents that the child reported various events that made him angry with his grandparents and felt violated by them. Thus, grandparent visitation would be suspended. The child's therapist asked the grandparents to give the child ample time to process the events.

Weeks later, on June 8, 2021, grandparents filed a motion to appoint a friend of the court ("FOC"). On June 14, 2021, the Mother responded *pro se*, arguing the child did not want to visit with his grandparents, and she argued the

grandparents should pay the full cost if the family court appointed an FOC to investigate the case. Counsel for the mother entered her appearance shortly after the mother filed her response.

On July 30, 2021, the family court entered an order setting a hearing for October 18, 2021, on the grandparents' motion to appoint an FOC. That same day the family court entered an order appointing an FOC.[3]

On August 9, 2021, the grandparents filed a motion to compel parents to execute all releases necessary to allow the child's therapist to communicate with and share information with the grandparents' therapist. The grandparents also moved the court to require the parents to engage their therapist. Alternatively, the grandparents moved the family court to allow the order appointing an FOC to stand and allow him to commence his investigation. On August 16, 2021, the parents filed their objection to the grandparents' motion to compel. Parents disagreed with the grandparents' representation of the facts. Grandparents replied. On August 26, 2021, the family court entered an order compelling the parents to execute releases for the child's therapist to communicate with the grandparents' therapist and ordered the parents to engage a licensed marriage and family therapist to work with the grandparents in this matter.

---

[3] The family court signed the order on June 16, 2021. R. at 57.

On November 17, 2021, the family court entered an agreed order appointing a new FOC in this matter. The previous FOC was no longer accepting appointments. On December 1, 2021, the family court entered another agreed order stating the parties agreed to split the FOC's fees and costs. Grandparents agreed to pay seventy percent, and parents would pay thirty percent. The agreed order provided details of how the FOC was to investigate the case, prepare a report, be available for a hearing, and recommend required therapy for parents.

On May 3, 2022, the grandparents filed a motion to require the child to continue therapy with the FOC's recommended therapist. The child's original therapist died. Based upon the FOC's recommendation, the parties agreed the child would begin seeing Dr. Anne S. Hammon. However, Dr. Hammon stopped accepting insurance for family court cases, and parents were unable to pay out of pocket for her services. Grandparents were willing to pay for the child to continue therapy with Dr. Hammon. Alternatively, grandparents moved for an issue-focused assessment conducted by Dr. Kelli Marvin, Ph.D., and Dr. Kristen McCrary, Psy.D.

Parents filed an objection. Parents were open to the FOC's recommended therapist, but they communicated they needed a therapist who accepted their insurance due to their income. Dr. Hammon initially accepted their insurance, but after the child's first visit, Dr. Hammon informed the FOC and

parents that she no longer accepted insurance on active court cases. Parents could not afford to pay for Dr. Hammon's services and began searching for a new therapist. On May 2, 2022, the parents found a new therapist, Dustin Sevier, and the child attended his first session on May 6, 2022. Parents argued healthcare is a custody matter. Grandparents did not have custody of the child and had no authority to direct and control the child's healthcare. Parents further argued they never agreed to see Dr. Hammon as a replacement. The family court did not order the parties to agree on a therapist for the child, and the FOC did not ask them to agree on a therapist. The parents agreed the therapeutic approach was best for the child, and he was currently seeing a new therapist.

Additionally, the parents objected to an issue-focused assessment. Parents argued it was in the child's best interest to continue with a therapist chosen by his parents. They argue there is an active FOC investigation, and the child should not be forced into another form of investigation or evaluation.

On May 10, 2022, the family court entered an order requiring the parties to participate in an issue-focused assessment with the two doctors chosen by the grandparents at the grandparents' expense. On May 11, 2022, the family court entered an order requiring the child to continue therapy with Dr. Hammon at the grandparents' expense. Parents appealed in No. 2022-CA-0572-MR and No. 2022-CA-0574-MR.

-7-

This Court consolidated the appeals and denied the grandparents' motion to dismiss the appeals. This Court held, "The orders appealed from relate to medical decisions concerning the child and are reviewable." COA September 19, 2022 Order at 3. *See* CR[4] 54.01; *N.B.*, 351 S.W.3d at 219 ("When, by the exercise of its continuing jurisdiction, the family court enters an order regarding a minor child's care and custody, that order is an appealable order and this Court may review it."); *Warawa v. Warawa*, 587 S.W.3d 631, 636 (Ky. App. 2019).

While the first two appeals were pending, on May 31, 2022, the grandparents moved to compel parents to follow the family court's May 10 and May 11, 2022 orders while their appeal was pending. On September 14, 2022, the family court entered an order abating the enforcement of only the May 10, 2022 order during the pendency of the appeal.

On October 12, 2022, the parents filed a motion for protective order. Parents asserted that although they agree that the child's February 2014 and March 2021 psychological evaluations should be provided to the FOC, they requested the evaluations be kept confidential from grandparents. Grandparents objected. Parents argued that as noncustodians, the grandparents had no right to access the child's medical records. Grandparents objected arguing an FOC's investigative file is statutorily to be made available to the parties.

---

[4] Kentucky Rules of Civil Procedure.

On February 13, 2023, the grandparents filed a motion requesting access to the child's March 2021 psychological evaluation. Grandparents argued the parties signed an agreed protective order tendered to the court on November 4, 2022 entitling them to access the evaluation.

Also on February 13, 2023, the grandparents filed a motion for the child to begin reunification therapy with the grandparents. Grandparents asserted the FOC recommended reunification therapy with the child's treating therapist, Dustin Sevier, and they agreed with her recommendation.

On February 16, 2023, parents filed an objection to the grandparents' motion. Parents noted the FOC's report stated Mr. Sevier's concerns with the child immediately being reintroduced to grandparents. Additionally, Mr. Sevier contacted the parents' counsel before the grandparents filed their motion stating the FOC's report did not accurately reflect his recommendation, and he believed reunification therapy would be contrary to the child's best interests. Parents also responded to grandparents accessing the child's March 9, 2021 evaluation. The parents stated grandparents already had access to that evaluation, so it was unclear why they filed the motion.

On March 3, 2023, parents moved the family court to alter, amend, or vacate its February 22, 2023 order regarding reunification therapy. Parents argued the court's order contradicts the child's therapist's recommendation and the

modified recommendation based on the child's therapy sessions. Parents further assert immediate reintroduction of grandparents to the child will cause behavioral issues and more trauma to the child.

On March 6, 2023, grandparents moved to appoint a different reunification therapist of their choosing. Grandparents assert because Mr. Sevier does not agree to be the unification therapist, they request the appointment of Dr. Christie Kincaid at their expense. Parents objected arguing Mr. Sevier recommended trauma-focused cognitive behavioral therapy for the child and psychological evaluations of grandparents and parents, which was included in his original recommendation but omitted from the FOC's report. Mr. Sevier also recommended reunification therapy with whoever performs the psychological evaluations of the parties. The parents did not agree the child was ready for reunification therapy, but Mr. Sevier recommended Sherri Puckett for reunification therapy.

On March 20, 2023, the family court entered an order appointing Dr. Christie Kincaid as the reunification therapist and the grandparents would be responsible for the cost. Parents appealed in No. 2023-CA-0397-MR. The family court ultimately held the underlying case in abeyance pending these appeals.

In all three appeals, parents raise the same three arguments: (1) grandparents lack constitutional standing to move the family court to order the

child to attend therapy and to request the child see a specific therapist of their choice at their expense; (2) the family court was required to issue findings of fact and conclusions of law in support of its orders; and (3) the family court violated parents' due process rights by entering the orders.

First, parents argue grandparents, as noncustodians, lack constitutional standing to move the family court to require the child to participate in specific therapeutic treatment and with specific therapists chosen by grandparents because these are medical decisions. We agree. Whether a petitioner has "standing is a jurisdictional question of law that is reviewed de novo." *Ward v. Westerfield*, 653 S.W.3d 48, 51 (Ky. 2022) (citing *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018)). "Standing requires that a party have 'a judicially recognizable interest in the subject matter of the suit.'" *Commonwealth v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 205 (Ky. 2007) (quoting *HealthAmerica Corp. v. Humana Health Plan, Inc.*, 697 S.W.2d 946, 947 (Ky. 1985)). If a party lacks constitutional standing to pursue a claim, "a circuit court cannot maintain proper original jurisdiction over a case to decide its merits because the case is *nonjusticiable* due to the plaintiff's failure to satisfy the constitutional standing requirement, [and] the Court of Appeals and this Court are constitutionally precluded from exercising appellate jurisdiction over that case to decide its merits." *Commonwealth Cabinet for Health and Family Services, Department for Medicaid Services v. Sexton by*

-11-

*and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 196-97 (Ky. 2018).

"[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Meinders v. Middleton*, 572 S.W.3d 52, 57 (Ky. 2019) (quoting *Troxel v. Granville,* 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)). "Issues concerning . . . medical decisions are matters of custody." *Warawa*, 587 S.W.3d at 636 (citing *Keeton v. Keith*, 511 S.W.3d 918, 921 (Ky. App. 2017)).

Here, grandparents lacked constitutional standing to move the family court to require the child to participate in specific therapeutic services with specific therapists at their expense because these are medical decisions. Grandparents merely have agreed upon visitation rights and are not custodians of the child. Though it is undisputed that the parents are the only custodians of the child, grandparents argue they have standing to move the court for the child to visit specific therapists at their expense to enforce their visitation rights.

Their argument is misplaced. The orders on appeal do not pertain to whether grandparents have visitation rights. Instead, each of the three orders on appeal allows grandparents to direct the child's medical care over the parents' objection. Based on our review of the record and applicable case law, the

grandparents lack constitutional standing to move the court to require him to participate in therapy with Dr. Hammon at their expense, to participate in an issue-focused assessment with Dr. Marvin and Dr. McCrary, and to participate in reunification therapy with Dr. Kincaid all at grandparents' expense. Thus, the circuit court lacked jurisdiction to enter the May 10, 2022, May 11, 2022, and March 20, 2023 orders.

Additionally, parents argue the family court abused its discretion in failing to issue findings of fact or conclusions of law in support of its order, and the orders violate parents' due process rights. Because the grandparents clearly lacked standing to file the motions and the family court lacked jurisdiction to enter the orders, we need not address these issues on the merits.

For the foregoing reasons, we reverse the May 10, 2022, May 11, 2022, and March 20, 2023 orders of the Jefferson Family Court and remand for further proceedings concerning grandparent visitation. We caution the family court to refrain from entertaining grandparents' motions that involve matters of custody such as medical decisions.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEFS FOR APPELLEES: |
|---|---|
| Makenzie Ackerman<br>Louisville, Kentucky | Melanie Straw-Boone<br>Peter J. Catalano<br>Louisville, Kentucky |