RENDERED:  FEBRUARY 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0929-ME

N.M.                                                                                        APPELLANT

|  | APPEAL FROM FAYETTE CIRCUIT COURT |
| v. | HONORABLE ROSS EWING, JUDGE |
|  | ACTION NO. 22-J-00472-002 |

CABINET FOR HEALTH AND
FAMILY SERVICES; CASA OF
LEXINGTON; FAYETTE COUNTY
ATTORNEY'S OFFICE; AND J.C.R.,
A MINOR CHILD                                                                    APPELLEES

AND

NO. 2025-CA-0932-ME

N.M.                                                                                        APPELLANT

|  | APPEAL FROM FAYETTE CIRCUIT COURT |
| v. | HONORABLE ROSS EWING, JUDGE |
|  | ACTION NO. 17-J-00985-003 |

CABINET FOR HEALTH AND
FAMILY SERVICES; CASA OF
LEXINGTON; FAYETTE COUNTY

ATTORNEY'S OFFICE; AND J.S.R.,                                    APPELLEES
A MINOR CHILD


<u>OPINION AND ORDER</u>
<u>DISMISSING</u>

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND L. JONES, JUDGES.

CETRULO, JUDGE:  Appellant, N.M., appeals the Fayette Family Court's

dismissal of the dependency, neglect, and abuse ("DNA") petitions she filed

against the Cabinet for Health and Family Services ("Cabinet") regarding J.C.R.

and J.S.R. ("Children"), foster children previously placed in her care.  These

appeals have been consolidated, and we address both in this Opinion.  Despite

finding legal error by the family court, we must DISMISS these appeals due to

N.M.'s lack of standing.

## **FACTS AND PROCEDURAL BACKGROUND**

The Cabinet first received custody of Children in June 2022 due to

DNA actions filed against their biological parents and placed Children with N.M.

as their foster parent in July 2022.  Children remained with N.M. for

approximately two and one-half years, and after the termination of the biological

parental rights, N.M. was approved as a pre-adoptive parent.  In January 2025,

however, the Cabinet removed Children from N.M.'s care[1] and placed them with another foster family. N.M. was permitted two virtual calls with each child twice a week.

On May 22, 2025, N.M. initiated DNA petitions against the Cabinet alleging neglect and abuse and attached six pages of assertions to support her claims that the Cabinet subjected Children to emotional harm, educational neglect, and risks of physical harm. Regarding emotional harm, N.M. centered her allegations around the "abrupt" removal of Children from her care, including but not limited to contesting the Cabinet's grounds for removal, the Cabinet's placement of Children in another foster home outside the immediate community and in a different county, and the Cabinet's restrictions on her communications with Children and the new foster family. In terms of educational neglect, N.M. claimed that the Cabinet failed to take necessary steps to ensure Children were promptly enrolled in their new school by the new foster family, which resulted in Children missing almost two weeks of school and being declared truant. Finally, as to the risks of physical harm, N.M. stated she witnessed at least one child unrestrained by either a car seat or seatbelt while in a moving vehicle.

---

[1] On appeal, N.M. notes that she disputed the factual underpinnings for the Cabinet's removal decision and pursued relief via administrative appeal, the outcome of which is unknown to this Court at the time of this Opinion.

-3-

Additionally, N.M. attached documentation, dated May 21, 2025, from the local government's property maintenance division that identified several code violations concerning Children's bedroom in the current foster family's home and declared it uninhabitable until corrections were made.

In her accompanying affidavits for emergency custody, N.M. indicated her belief that Children were "in danger of imminent death or serious physical injury" and/or "in immediate danger due to the failure or refusal of the parent(s) to provide for the safety or needs of the child[ren]." N.M. accused the Cabinet of failing to take any remedial action despite its awareness of these concerns. Proclaiming herself "fictive kin,"[2] N.M. requested the family court remove Children from Cabinet custody and place them back in her care.

N.M.'s DNA petitions and affidavits for emergency custody were filed on May 27, 2025, and respectively dismissed and denied by the family court on the same day. Utilizing Form AOC-DNA-2,[3] the family court found no reasonable grounds supporting the award of emergency custody, ordered the

---

[2] Kentucky Revised Statute ("KRS") 600.020(28) defines "fictive kin" as "an individual who is not related by birth, adoption, or marriage to a child, but who has an emotionally significant relationship with the child, or an emotionally significant relationship with a biological parent, siblings, or half-siblings of the child in the case of a child from birth to twelve (12) months of age, prior to placement[.]"

[3] AOC-DNA-2 is a form order to grant or deny emergency custody and to direct subsequent proceedings on a DNA petition, including the scheduling of a temporary removal hearing under KRS 620.080.

petitions to be "dismissed due to legal insufficiency," and added the following sentence to the form order: "Even if true, these allegations would not place the child in danger of imminent death or serious physical injury." By dismissing the petitions, the court further declined to hold temporary removal hearings pursuant to KRS 620.080.

On June 6, 2025, N.M. sought relief by filing motions under Kentucky Rules of Civil Procedure ("CR") 52.02 and 59.05. The family court held a hearing on the motions on June 23, 2025, during which no testimony was taken. An assistant county attorney was present but did not make any substantive argument in response to N.M.'s motions. Instead, the hearing primarily consisted of the court querying N.M.'s counsel on whether the Cabinet (and by extension, the Commonwealth) could be the target of a DNA petition. The court focused on the definition of an "abused or neglected child" set forth in KRS 600.020(1) and its own understanding that neither the Cabinet nor Commonwealth constituted a "person" for purposes of that statutory definition. N.M.'s counsel requested leave to brief the issue, but the court denied that request and indicated that it would render an order following the hearing.

In its ensuing order, the family court denied N.M.'s CR 59.05 motion but supplemented its findings. Specifically, the court found that holding the Cabinet as the "person" responsible for the abuse or neglect of a child under KRS

600.020(1) was a "legal impossibility." The court reiterated that this conclusion, in part, led it to dismiss the DNA petitions "due to legal insufficiency."[4] N.M. then brought this appeal.

## ANALYSIS

Before this Court, N.M. argues the family court committed the following errors: (1) holding the Cabinet was not a "person" who may be the target of a DNA action; (2) failing to hold a temporary removal hearing per KRS 620.080; and (3) dismissing the DNA petitions for legal insufficiency.

N.M. is correct that the family court erred in determining the Cabinet could not be a "person" for purposes of KRS 600.020(1.) *See Commonwealth v. Baker*, 645 S.W.3d 411, 420-21 (Ky. 2022). N.M. is also correct that KRS 620.080 requires a temporary removal hearing to be held, "[u]nless waived by the child and his parent or other person exercising custodial control or supervision," within 72 hours from issuance of an emergency custody order or within ten days from the filing of a DNA petition. KRS 620.080(1). It is at the temporary removal

---

[4] The court further observed its concerns over N.M.'s credibility and restated its previous finding from the AOC-DNA-2 order that even if her allegations were "true and correct," the petitions would still fail. In the June 23 hearing, the court made the following statement, which we include as it sheds light on the court's additional reasoning behind dismissing the petitions: "This is my struggle is to understand how . . . people think that every bad act of child maltreatment means the child is an abused or neglected child, but the statutory definition is specific and is child focused. And so even if I took you, even if I took you at your word, and I do not – be very clear – I do not. But even if I did, I don't understand how that would lead to a legal finding that this child is an abused or neglected child."

hearing that the court "determine[s] whether there are reasonable grounds to believe that the child would be dependent, neglected or abused if returned to or left in the custody" of the pertinent person or entity. KRS 620.080(2). Here, the family court dismissed the DNA petitions at the outset, thereby dispensing with the requirement to hold a temporary removal hearing. The result is a truncated appellate record, containing a family court's ruling based primarily on an inaccurate legal conclusion.

On appeal, Appellee Fayette County Attorney ("County") briefly raises the question of N.M.'s standing as an "interested person" to file a DNA petition under KRS 620.070,[5] a question not addressed by the family court. Consequently, the issue of whether N.M. was an *interested person* under KRS 620.070 for filing purposes is not before us. Our analysis instead must consider whether N.M. is an *interested party* to this appeal under KRS 620.155. Because we find she is not, we must dismiss the appeal due to N.M.'s lack of both statutory and constitutional standing.

KRS 620.155 governs appeals from DNA proceedings and provides that "[a]ny interested party aggrieved by a proceeding under KRS 610.010(2)(d) including the parent, child, guardian ad litem, the cabinet, and the county attorney

---

[5] KRS 620.070(1) provides that "[a] dependency, neglect, or abuse action may be commenced by the filing of a petition by any interested *person* in the juvenile session of the District Court." (Emphasis added).

may appeal from the juvenile court to the Circuit Court as a matter of right in the manner provided in the Kentucky Rules of Civil Procedure." The terms, "interested person" in KRS 620.070(1) and "interested party" in KRS 620.155, are not defined by statute. However, as this Court recently concluded in *G.M.A. v. Commonwealth*, "when filed by an 'interested person' *with proper standing*, the petitioner in a DNA action is accorded the status of party-plaintiff." 689 S.W.3d 142, 146 (Ky. App. 2024) (emphasis added).

In *G.M.A.*, the Commonwealth did not challenge the petitioners' standing to file a DNA petition but objected to their standing to participate as *parties* in the DNA action. *Id.* at 146-47. This Court recognized that the petitioners' status as party-plaintiffs originated not just from filing the DNA petition; the petitioners had custody of the child prior to and at the filing of the petition, and their claim to custodial rights was a substantial and judicially recognizable interest, which was adversely affected by the rulings of the family court. *Id.* Accordingly, *proper standing* in this instance refers to constitutional standing.[6]

---

[6] *See, e.g.*, *Lincoln Trail Grain Growers Ass'n, Inc. v. Mead Cnty. Fiscal Ct.*, 632 S.W.3d 766, 774 (Ky. App. 2021) ("[T]he mere existence of a statutory right to bring an action does not confer constitutional standing. However, the existence of a statutory cause of action is clearly relevant to a determination of such standing.").

Constitutional standing is required before this Court may reach the merits of the case. *Commonwealth, Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 188 (Ky. 2018) (adopting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)) ("[T]he existence of a plaintiff's standing is a constitutional requirement to prosecute any action in the courts of this Commonwealth[.]"). Constitutional standing is a doctrine of justiciability, and as such, operates to ensure the appropriate exercise of judicial power. *Id.* at 193. "Under the separation of powers enshrined in our Kentucky Constitution, the courts of this Commonwealth consider only 'justiciable causes.'" *Graham v. Sec'y of State Michael Adams*, 684 S.W.3d 663, 676 (Ky. 2023) (quoting KY. CONST. § 112(5)) ("The Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court."); *Sexton*, 566 S.W.3d at 197 ("[T]he *justiciable cause* requirement applies to cases at all levels of judicial relief."). Accordingly, our Supreme Court has held "all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only *justiciable causes* proceed in court, because the issue of constitutional standing is not waivable." *Sexton*, 566 S.W.3d at 192 (citations omitted). As a "jurisdictional question of law," standing is subject to *de novo* review. *Ward v. Westerfield*, 653

S.W.3d 48, 51 (Ky. 2022) (citing *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018)).

A plaintiff bears the burden of establishing constitutional standing, *id.* (citing *Lujan*, 504 U.S. at 561, and the failure to do so requires dismissal for lack of subject matter jurisdiction. *City of Pikeville v. Kentucky Concealed Carry Coalition, Inc.*, 671 S.W.3d 258, 264 (Ky. 2023) (citing *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 Fed. App'x 6, 11 (6th Cir. 2018)). Constitutional standing is comprised of three core components: (1) injury, (2) causation, and (3) redressability. *Sexton*, 566 S.W.3d at 196.[7]

In *Overstreet v. Mayberry*, our Supreme Court observed that the "injury" must be "concrete, particularized, and actual or imminent." 603 S.W.3d 244, 252 (Ky. 2020) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)). To be *concrete*, the injury "must 'actually exist.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). An injury is *particularized* when it "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Spokeo*, 578 U.S. at 339). Finally, "while an injury may be threatened or imminent, the concept

---

[7] "In other words, 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' '[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . .' 'The injury must be . . . "distinct and palpable," and not "abstract" or "conjectural" or "hypothetical."' 'The injury must be "fairly" traceable to the challenged action, and relief from the injury must be "likely" to follow from a favorable decision.'" *Id.* (citations omitted).

of imminence 'cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for [constitutional standing] purposes – that the injury is *certainly impending*.'" *Id.* (alterations in original) (quoting *Clapper*, 568 U.S. at 409). Regarding the latter, "'[a]llegations of *possible* future injury' are not sufficient." *Id.* (alterations in original) (quoting *Clapper*, 568 U.S. at 409).

In support of her argument for constitutional standing, N.M. cites to this Court's opinion in *F.E. v. E.B.*, wherein we stated that "[a] person usually has [constitutional] standing if that party has a substantial interest in the subject matter of the litigation and they will be aggrieved by an adverse ruling by the court." 641 S.W.3d 700, 706 (Ky. App. 2022) (quoting *Riehle v. Riehle*, 504 S.W.3d 7, 9 (Ky. 2016)). An examination of the facts in *F.E.* provides additional clarity to that principle in the context of this case. In *F.E.*, we held that a child's aunt had a "substantial interest" by virtue of a trial court's earlier order awarding visitation rights, and that aunt "stood to be negatively impacted" if a court granted a motion to terminate those rights two years later. *Id.*

N.M. asserts that she is "fictive kin" and relies on her previous role as a foster parent to substantiate her "interest" in this matter. However, the family court did not make that factual finding, and we do not make that here. It is clear from the short record on appeal that N.M. desires custody of Children, but the reality is that N.M. had no current custodial rights nor any other rights in jeopardy

that could be construed as substantial or judicially recognizable interests concerning Children at the time of the filing of the petitions. *See, e.g.*, *G.M.A.*, 689 S.W.3d at 146 (concluding that grandparents who were custodians and filed the DNA petition had "proper standing" to participate as a party to the proceedings). *See also A.N.M. v. L.E.A.*, No. 2024-CA-1257-ME, 2025 WL 2736791, at *3 (Ky. App. Sep. 26, 2025) (dismissing petitioner-sister's appeal for lack of standing, noting that sister did not have custodial rights and her continued participation after filing the DNA petition was unnecessary to protect child's best interests as such interests then fell under purview of the family court, guardian ad litem, and the Commonwealth); and *J.P. v. S.C.*, No. 2023-CA-0046-ME, 2024 WL 736471, at *2-3 (Ky. App. Feb. 23, 2024) (dismissing temporary custodians' appeal for lack of standing wherein custodians appealed court's disposition in DNA case returning custody to parent).[8]

N.M. argues that if the family court had proceeded with a temporary removal hearing, she "may have been the placement for the children that would be in their best interests." This claim, however, exemplifies the type of speculative or hypothetical injury that is insufficient to establish the concrete, particularized, and actual or imminent injury necessary for constitutional standing.

---

[8] We cite these unpublished opinions for reference as persuasive, nonbinding authority. Kentucky Rules of Appellate Procedure ("RAP") 41.

-12-

Regardless of N.M.'s earnestness and desire to gain custody of Children, she lacks an injury-in-fact necessary for constitutional standing in the matter presently before us. As a matter of law, then, N.M. does not have constitutional standing and was not a party below. Because N.M. was not a party, she lacks statutory standing under KRS 620.155 to file this appeal. *See Civil Serv. Comm'n v. Tankersley*, 330 S.W.2d 392, 393 (Ky. 1959) (citations omitted) ("Only parties to litigation who have rights that may have been erroneously injured or rights which may be enforced by law in whole or in part by obtaining a reversal of a judgment are entitled to maintain an appeal.").

## CONCLUSION

Accordingly, the Court ORDERS that the above-styled appeals are hereby DISMISSED.

ALL CONCUR.

ENTERED: _____02-06-2026_____

_Susanne M. Cetrulo_

HON. SUSANNE M. CETRULO
JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANT:

Erin Kennedy Startzman
Joe Denger
Lexington, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, FAYETTE COUNTY
ATTORNEY:

Angela Evans
Fayette County Attorney

Jade Morgan
Assistant Fayette County Attorney
Lexington, Kentucky